## Commonwealth to use, Appellant, *v.* Moran.

*Criminal law—Fornication and bastardy—Bond—Death of defendant—Principal and surety.*

1. Where a person who has been convicted of fornication and bastardy enters a bond with surety conditioned to pay a weekly sum for five years for the maintenance of the child, and about a year after the filing of the bond, dies, the surety will not be liable for any weekly payments maturing after the death of the principal.

2. In such a case where the defendant is sentenced to pay the usual fine, the costs of prosecution and $2.50 per week for five years for the maintenance of the child, and to enter into a bond with surety in the sum of $500, the portion of the sentence fixing the sum to be paid and appropriating it to the maintenance of the child cannot be separated from the rest of the sentence. The liability of the defendant and his surety is not a debt in the ordinary sense, but is created by the sentence, and as death revokes the sentence, the liability is also revoked.

*Practice, C. P.—Demurrer—Affidavit of defense.*

3. In an action on a bond where a demurrer is overruled with leave to the defendant to file an affidavit of defense, the order of the court is not a final judgment for the plaintiff, and the defendant may raise in the affidavit of defense the same legal question raised by the demurrer.

Argued April 27, 1914. Appeal, No. 107, April T., 1914, by plaintiff, from order of C. P. Allegheny Co., July T., 1913, No. 968, discharging rule for judgment for want of a sufficient affidavit of defense in case of Commonwealth to use of Blanche Bruce v. John J. Moran. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit on a bond.

The opinion of the Superior Court states the case.

*Error assigned* was the order of the court discharging rule for judgment.

*M. H. Stevenson*, for appellant.—Defendant was concluded by the order overruling the demurrer: Pollock v. Chapman, 8 W. N. C. 433.

The defendant's liability on the bond was not terminated by the death of his principal: Com. v. Emery, 2 Binn. 431; Com. v. Haffey, 6 Pa. 348; Hellings v. Poor Directors, 15 Pa. 409; Sheffer v. Rempublicam, 3 Yeates, 39; Goddard v. Com., 6 S. & R. 282; Philippi v. Com., 18 Pa. 116.

An action to enforce the bondsmen's liability is a civil action and does not sound in tort: Snyder v. Com. to use, 1 P. & W. 94; Smith v. Com., 59 Pa. 320.

The cases make a distinction between the sentence to pay fine, costs and lying-in expenses, and the order to pay maintenance and give security therefor: Duncan v. Com., 4 S. & R. 448.

*William H. Thompson,* for appellee.—The order to pay money for the support of a bastard child is a personal punishment and dies with the person against whom it is made: Philadelphia v. Haslitt, 14 Phila. 138, and 37 Legal Intelligencer, 386.

OPINION BY HEAD, J., October 12, 1914:

In the court of quarter sessions of Allegheny county one John Moran, Jr., entered a plea of guilty to a charge of fornication and bastardy and was sentenced to pay the usual fine, the costs of prosecution and $2.50 per week for five years for the maintenance of the child and to enter into a bond with surety in the sum of $500. The fine, costs and lying-in expenses were paid and the bond given with his father, John J. Moran, the present defendant, as surety. About a year later John Moran, Jr., the principal in the bond, died, having paid all of the $2.50 per week payments up to the date of his death. This suit was then begun in the name of the commonwealth to the use of Blanche Bruce against the surety alone to recover from him or his estate—he having died since the action was begun—the weekly payments, specified in the sentence and bond, that had matured since the death of the principal.

To the plaintiff's statement the defendant demurred. There was no formal joinder of issue on the demurrer. The learned court below entered no judgment for either party, but being of opinion the question could be more satisfactorily reached after an answer, overruled the demurrer with leave to the defendant to file an affidavit of defense within fifteen days. The affidavit was filed and the plaintiff entered a rule for judgment for want of a sufficient affidavit. From the order discharging that rule this appeal was taken.

Under the circumstances noted it must be apparent the order overruling the demurrer was not the equivalent of a final judgment for the plaintiff. The legal defense arising from the facts averred in the affidavit had not been finally adjudicated adversely to the defendant and the first position assumed by the appellant is untenable.

Turning then to the main question involved, we may observe that although it has never reached an appellate court in Pennsylvania, we are not without the benefit of several adjudications of questions so closely connected with it as to be helpful in pointing the way to a correct conclusion.

Prior to the conviction and sentence of the putative father, no obligation to pay money to anybody rested on him which the law recognized as sufficient to support an action either by the mother of the child, by its guardian, by the commonwealth, or any of its political subdivisions. His liability to pay money, therefore, was created by and resulted from the sentence of a criminal court following his conviction of a violation of the public law of the commonwealth. That sentence was imposed by the authority of the Crimes Act of 1860. That statute provides that the convicted criminal "shall be sentenced in addition to the fine aforesaid . . . . to give security . . . . to perform such order for the maintenance of the said child as the court . . . . shall direct and appoint." The obligation of the convicted defendant to pay the money named, and to furnish the collateral se-

curity or the independent hostage for his performance of the sentence, are by the very terms of the statute an integral part of the sentence itself. It matters not the legislature saw fit to make the money, to the payment of which the defendant was sentenced, payable in installments extending over a period of years and appropriated it to the maintenance of the child. It would have been entirely competent for that body to have declared such defendant should be punished by a sentence directing him to pay a bulk sum of money to the mother of the child, to its guardian, or to the local poor authorities and then casting upon its recipient the duty of maintaining the child. We cannot adopt as sound then the contention of the appellant that the portion of the sentence fixing the sum to be paid and appropriating it to the maintenance of the child can be essentially differentiated from the remainder of the sentence.

No such conclusion can be justly drawn from the case of Duncan v. Com., 4 S. & R. 448. In that case a defendant convicted of adultery and bastardy, when called for sentence, pleaded a pardon. The court, after an inspection of the executive act, determined it was a partial not a plenary pardon, and gave judgment accordingly. But in Com. v. Ahl, 43 Pa. 53, the defendant was convicted of the offense of fornication and bastardy. Before sentence he obtained a plenary pardon from the executive which he pleaded in bar of any sentence. The learned court below was urged to determine that, notwithstanding the pardon, the defendant could still be lawfully ordered to pay a certain sum of money for the maintenance of the child. The court, after quoting the language of the act of clemency, said: "In using these words, the governor evidently intended that the pardon should set aside and annul the verdict, and arrest the judgment. I cannot perceive how any vested right, order or decree can be founded upon, or flow from a conviction thus circumstanced. But the case of Com. v. Duncan, is cited as in point; there the adultery only

was pardoned, and the bastardy specially excluded. But here everything is included—fornication, bastardy, offense and conviction—all pardoned. We therefore think there is nothing upon which we can found an order of maintenance." The judgment was that the defendant go without day. In affirming that judgment Chief Justice LOWRIE said: "The costs and the lying-in expenses, and the maintenance of the child, are essential parts of the sentence in such cases, and can be imposed only where sentence can lawfully be pronounced. The pardon prevents the sentence entirely, and therefore discharges from them as well as from any other consequence of the conviction." There would seem to be no room for argument that if the pardon had followed the sentence, it would not have released every obligation imposed by that sentence on the defendant. But it is not the function of the executive in granting a pardon to extinguish debts due by the defendant which have their foundation in contract. It is difficult to see therefore how the fact that a defendant in a criminal case, who, in the performance of his sentence gave the bond required by it under the authority of the statute, has created a debt in the ordinary legal acceptation of that term.

Again most of the states of the union have either enacted statutes or adopted constitutional provisions prohibiting imprisonment for debt. Could a defendant, who had been sentenced by a criminal court to pay money in installments, successfully urge that he could not be coerced to pay them by imprisonment because they were simple debts flowing from a contract into which he entered when he signed the bond demanded by his sentence? In many states a negative answer has been made to this contention. The precedents are collected and reviewed in an elaborate note to the case of State of Tennessee v. Yardley, 95 Tenn. 546, reported in 34 L. R. A. 656. The principle running through the decisions of the various courts may be thus stated: "And the Ohio courts have held that the proceedings under

the Ohio statute, whereby the father of an illegitimate child may be imprisoned to enforce the sentence and order of the court with respect to the child's maintenance, are not in conflict with section 15, article I of the constitution of that state for the reason that the liability sought to be enforced is not founded upon a contract, express or implied, but originates in the wrongful act of the defendant, and therefore the imprisonment of the defendant in such a case is not contrary to the constitution: Musser v. Stewart, 21 Ohio State, 353." Following the reasoning in this line of cases, we would again reach the conclusion the defendant, who executed the bond as a part of the sentence imposed upon him by the court of quarter sessions, did not thereby create a debt or a cause of action sounding in contract which under general law would survive his death.

In State of Michigan v. Kemppainen, reported in 128 N. W. Repr. 183 and 30 L. R. A. (N. S.) 1166, a defendant, who had been convicted of fornication and bastardy and been denied a new trial, appealed to the Supreme Court. In the opinion, holding that there is nothing to survive the death of the defendant in such case, Mr. Justice McAlvay quotes the following language from the Supreme Court of Maine in McKenzie v. Lombard, 85 Me. 224, viz.: "The process, though held to be a civil proceeding, is criminal in form and is an extraordinary means to compel a father to assist in the support of his illegitimate child or suffer imprisonment for his neglect to do so. There is no fitness in the proceeding that would adapt itself to the principle of survivorship. If the impending action survives, then the cause of action would survive as well, and the process could be originally instituted against the administrator of the deceased." The Michigan court thus proceeds: "Such a right of action would not survive at the common law. The true test was whether the injury on which the cause of action was based affected property rights or affected the person alone. In the former case

the cause of action survived, while in the latter it abated. There is no statute in Michigan which provides for such survival. . . . Upon the death of the defendant it abated, and this proceeding and the order and judgment brought here for review by reason thereof became of no force and effect." See also Clements v. Durham, 52 Nor. Car. 100. The courts of Indiana have held differently because the statute of that state provides that "In case of the death of the putative father of such child, either before or after the commencement of the prosecution, the right of action shall survive and may be prosecuted against the personal representatives of the deceased with like effect as if such father were living, except that no arrest of such personal representatives shall take place or bond be required."

In our own case of Com. v. Dunn, recently decided at Pittsburg and not yet reported, we held that the death of the defendant, after conviction and sentence and before the hearing of his appeal in this court, necessarily abated that appeal and ended the proceeding, and this would be true no matter how manifest the errors disclosed by the record which attended the entry of the judgment appealed from. Could the commonwealth then, after the death of the sentenced defendant, successfully invoke the process of the courts to compel the performance by his heirs, his surety, or other person of that portion of his sentence which, by the interposition of an act of God, he was no longer able to perform? All of these lines of reasoning seem to converge to the support of the proposition that the death of one convicted in and sentenced by a criminal court worked a discharge of every obligation imposed by and rooted in his sentence.

Was the undertaking of the surety broader than that of his principal? To state the question is almost to answer it. Let us for a moment turn our attention to the bond itself, upon which this action against the surety is based. It in the first instance acknowledges that both

principal and surety are bound to the commonwealth in the sum named, conditioned that if the said defendant who was sentenced to pay . . . . and enter bond with surety in the sum of $500 comply without default, then this obligation to be void, etc." We have already attempted to show that by the execution of this bond the principal therein created no debt from which would spring a cause of action that would survive his death. Was his death with its consequences a default within the meaning of the bond? Sir William Blackstone, in defining the law relating to such obligation, says: "If the condition (of the bond) be possible at the time of making it and afterwards becomes impossible by the act of God, the act of law or the act of the obligee himself, there the penalty of the obligation is saved:" II Blackstone Com. 341. If the bond in the present case had been conditioned for the appearance of the defendant at some future date, his intervening death would have rendered impossible the performance of the condition, but there would have been a default according to the letter of the bond. Yet we suppose it would not be seriously contended the surety in such case had created an absolute obligation to pay the money if the defendant did not appear, no matter what cause operated to prevent his appearance. We are of opinion the obligation in the present case did not essentially differ from the one in the illustration we have just used.

When the act of God, that is the death of the defendant, made impossible his further compliance with the sentence of the criminal court, there was no default within the true meaning of the obligation entered into by the surety. The learned court below, in his opinion refusing to enter a summary judgment, relied largely on the case of City v. Haslitt, reported in 14 Phila. Rep. 138. There a situation arose precisely like the one in the case at bar except that the bond given by the convicted defendant and his surety contained a warrant for the entry of a judgment and the warrant was im-

mediately executed. The judgment remained dormant during the two years the principal lived because during that period he paid all of the installments required by the sentence and the bond. Later a fi. fa. was issued for the recovery of certain installments accruing after his death. A petition was filed by the surety setting forth the death of his principal and that by reason thereof no further proceedings could be lawfully taken against the surety. The rule which had been granted to open the judgment as against the surety was, after hearing and argument, made absolute. Of course the decision of the court of common pleas of Philadelphia is not binding upon this court. But when it appears from the report of the case that the question was argued before two such justly distinguished jurists as the late Judge HARE and ex-Chief Justice MITCHELL, their conclusion would certainly be persuasive evidence of what the law in such case would be. No opinion was filed but the arguments of counsel are reported in full and the interpellations of the judges clearly indicate the question before us was the one they regarded as controlling in reaching their conclusion. It is true the report shows that counsel opposing the rule also brought to the attention of the court that no affidavit had been filed showing the exact amount of the installments due before the execution issued. To this, however, but little attention seems to have been given in the argument, and reasonably so because it would be but an irregularity that could readily be cured by leave to file such affidavit nunc pro tunc.

Because of the novelty of the question and the very able and earnest argument presented to us by counsel for the plaintiff, we have given the case most careful consideration and expressed our views at more than usual length. We are all of the opinion the learned court below reached a correct conclusion. If sound reason, good morals or wise policy demand a change in the legal status of the father of an illegitimate child, such change must be wrought by the legislative branch of

the government. We but administer the law as we find it.

As the plaintiff's right to appeal in such a case is statutory, we must follow the order prescribed by the statute in such cases. The assignment of error is overruled.

The appeal is dismissed at the costs of the appellant, without prejudice, etc.