Hurtt, Trustee, Appellant, v. Stirone, Appellant.

Argued October 9, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

reargument refused February 16, 1965.

*David McNeil Olds*, with him *Blair S. McMillin,* and *Reed, Smith, Shaw & McClay,* for plaintiff.

*Lloyd F. Engle, Jr.,* with him *Wilner, Wilner & Kuhn,* for defendant.

OPINION BY MR. JUSTICE EAGEN, January 14, 1965:

This case presents two appeals from a judgment entered in the Court of Common Pleas of Allegheny County.

The factual background is as follows:

The plaintiff, Trustee in Bankruptcy of the Estate of William G. Rider, individually and trading as Rider Supply Company and Rider Construction Company, bankrupt, brought this action of assumpsit in his capacity as trustee to recover a sum of money paid by Rider to the defendant as the result of extortionate threats.

Rider was engaged in construction work, and also in the business of supplying building materials to general contractors in western Pennsylvania. He became

involved with the defendant, a "labor leader" in the same area, during the course of negotiations for the award of a sub-contract to supply ready-mix concrete to a construction company, Ragnar Benson, Inc. (Ragnar), for incorporation into a steel mill to be built by that company. Rider was awarded this sub-contract on a bid of $11.75 per cubic yard of concrete delivered, and, pursuant thereto and to subsequent additions delivered in excess of 60,000 cubic yards of concrete. Rider then paid $31,274.13 to the defendant, calculated on the basis of $.50 per cubic yard of concrete which Rider had delivered to Ragnar.

It is the recovery of this money that forms the basis of this action. Plaintiff's evidence established that the money was paid to the defendant by Rider as the result of extortionate threats made by the defendant, to the effect that unless Rider complied, the defendant, by virtue of his position as labor leader, would cause Rider to lose the sub-contract with Ragnar, and other business which the defendant could influence. Defendant admitted receiving the money, but denied making the alleged threats and asserted that the payments were consideration for efforts on his part to secure the Ragnar contract for Rider.

At the conclusion of the testimony, the trial court *directed* the jury to return a verdict in favor of the plaintiff in the sum of $31,274.13, plus interest not to exceed 6% from January 1, 1954. The jury returned a verdict in the total sum of $38,779.92 ($31,274.13 plus interest not to exceed $7505.79), which included the principal sum plus interest at the rate of 3%.

The defendant filed a motion for a new trial based upon alleged trial errors. The plaintiff filed a motion to mould the verdict, contending that, under the circumstances, he was entitled to recover interest at the rate of 6%. Both motions were dismissed by the court en banc, and from the judgment entered upon the verdict, both parties appealed.

Defendant's Appeal (No. 219)

As a result of the money payments involved herein, the defendant was twice tried and convicted in the United States District Court for the Western District of Pennsylvania for violation of the Hobbs Anti-Racketeering Act, 18 U.S.C. §1951: *United States v. Stirone,* 168 F. Supp. 490 (W.D. Pa. 1957), aff'd 262 F. 2d 571 (3d Cir. 1958), rev'd 361 U.S. 212 (1960); and, *United States v. Stirone,* 311 F. 2d 277 (3d Cir. 1962), cert. denied 372 U.S. 935 (1963). At the trial on the criminal indictment, similar factual issues were involved and the defendant's testimony was the same as given in the trial of the present action.

At the instant trial, the record of the defendant's conviction was admitted in evidence, over objection, as *some evidence* of duress to secure the payments involved, and also to impeach defendant's credibility. However, in charging the jury, the trial court ruled, on the basis of *Pennsylvania Turnpike Comm. v. United States Fidelity & Guaranty Co.,* 412 Pa. 222, 194 A. 2d 423 (1963), that the record of the criminal conviction was conclusive evidence of the fact of the alleged extortion and, therefore, the plaintiff was entitled to a directed verdict for the recovery of the sums so paid. It is this ruling that is primarily questioned here.

The question for determination, therefore, may be stated in this manner: In a civil suit against a convicted extortioner to recover the extorted money, is proof of the conviction of the extortion conclusive evidence of the fact of extortion?

Research discloses that decisions in other jurisdictions reflect a marked disparity in result. See, 18 A.L.R. 2d 1287. The majority of jurisdictions exclude the record of the criminal conviction and rule that it has no probative value for any purpose. See, 50 C.J.S. Judgments, §754(b). However, the rationale is based

more in history and technicality than in logic. Moreover, there is a growing tendency to decide each case upon its particular facts, with a view toward applying the exclusionary rule only where reason and logic so demand. See, *Eagle, Star & British Dominions Ins. Co. v. Heller,* 149 Va. 82, 140 S.E. 314 (1927), for a well reasoned discussion. See also, *Schindler v. Royal Ins. Co.,* 258 N.Y. 310, 179 N.E. 711 (1932); *Local 167, I.B. of Teamsters v. United States,* 291 U.S. 293 (1934); and, Developments in the Law Res Judicata, 65 Harv. L. Rev. 818 (1952).

In Pennsylvania, judgments in criminal cases for years were held inadmissible to establish the facts in a civil case. See, *Estate of Edward D. Gartner,* 94 Pa. Superior Ct. 45 (1928), and *Commonwealth v. Moran,* 251 Pa. 477, 96 A. 1089 (1916). But the tendency of recent decisions is away from enforcing a rigid rule. See, *Mineo v. Eureka Security Fire & Marine Ins. Co.,* 182 Pa. Superior Ct. 75, 125 A. 2d 612 (1956), and *Greifer's Estate,* 333 Pa. 278, 5 A. 2d 118 (1939).

Very recently this Court unanimously held[1] in *Pennsylvania Turnpike Comm. v. United States Fidelity & Guaranty Co.,* supra, that a public servant and his surety bondsman were conclusively bound as to the fact of guilt, established by the record of the individual's prior criminal conviction for criminal misbehavior in office introduced in a civil action, involving the same facts and issues. The parallels of the present case to that case are striking. In each case, the record of conviction of the *defendant* was offered by the plaintiff, in the civil action, to bar the defendant from avoiding restitution, as opposed to the record of conviction of the plaintiff, as was the situation in *Mineo,* supra. So too, in each case the defendant was seeking to avoid

---

[1] Mr. Justice COHEN did not participate in the consideration or decision of the case.

payment of a sum of money to the plaintiff by asserting non-liability on the basis of the facts already established to the contrary in prior criminal proceedings.

In *Mineo,* at page 86, the Court said, "We are of the opinion that when one is convicted of a felony and subsequently attempts to benefit from the commission, the record of his guilt should be a bar to his recovery." We are equally of the opinion that when one has been convicted of a felony, the result of which is of financial benefit to him, the record of his guilt should bar his avoidance of restitution therefor. This was implicit in the ruling of the *Pennsylvania Turnpike Commission* case, supra, and we now directly so hold. In *Mineo,* the basic fact in issue was whether or not the plaintiff's assignor had started the fire; in the *Pennsylvania Turnpike Commission* case, it was whether or not Torrance had violated the trust of his office; here, it is whether or not the defendant extorted money from Rider. The parallel is persuasive.

The same principles of public policy enunciated in *Mineo,* supra, and *Pennsylvania Turnpike Commission,* supra, apply with equal force to the present case. The defendant was presented with more than ample opportunity to overcome the charges lodged against him while he was swathed in a cloak of presumed innocence. His case was twice presented to a federal jury which found him guilty of extortion beyond a reasonable doubt, upon the same facts which are now urged as the basis for his civil liability. To now hold that the effect of those jury determinations is *nil* not only would be to fly in the face of reason, but also would be a general indictment of the whole American jury system. We are not now prepared to say that the mere technical effect of the doctrines of res judicata and collateral estoppel regarding identity of parties is sufficient to overcome the policy which requires us to give conclusive effect to the prior conviction herein.

The defendant should not now be heard to deny that which was established by his prior criminal conviction, without proof that his conviction was procured by fraud, perjury or some manner of error now sufficient to upset the conviction itself. Defendant has had his day in court and has failed to instill even a reasonable doubt in the collective mind of his then jury. No valid reason exists why he should be given a chance to try his luck with another jury.

In so deciding, we recognize a valid existing distinction in cases involving the record of conviction of relatively minor matters such as traffic violations, lesser misdemeanors, and matters of like import. Especially in traffic violations, expediency and convenience, rather than guilt, often control the defendant's "trial technique." In such cases, it is not obvious that the defendant has taken advantage of his day in court, and it would be unreasonable and unrealistic to say he waived that right as to a matter (civil liability), which was probably not within contemplation at the time of the conviction. Compare also the effect given in Pennsylvania to a plea of nolo contendere: *Teslovich v. Fireman's Fire Ins. Co.*, 110 Pa. Superior Ct. 245, 168 A. 354 (1933).

The policy shifts with regard to major criminal convictions such as the one presented. We find it incredible in such a situation that a defendant would present less than his best defense, knowing that his failure would result in the loss of substantial property, or even his liberty.[2]

---

[2] On October 16, 1961, Nicholas A. Stirone, defendant herein, was adjudged to be guilty and sentenced to be imprisoned for a period of 10 years, and to pay a fine of $10,000 upon the above-mentioned federal indictment for violation of 18 U.S.C. §1951.

Plaintiff's Appeal (No. 225)

As above noted, the jury returned a verdict in favor of the plaintiff for the principal sum, plus interest at the rate of 3%. Plaintiff contends that, since the amount of money involved was not in dispute, he is entitled as a matter of law to receive interest at the legal rate of 6%, and that the lower court erred in not moulding the verdict to include this sum.

After careful consideration of the pertinent case law, this court is equally divided on this question. Hence, the determination of this issue by the lower court must stand.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

What a defendant battles for in a criminal case is wholly different from what he defends against in a civil case. The issues are different, the facts frequently differ, and they are certainly presented in a different way. Obviously, the objectives are different.

In fighting for his name and liberty in a criminal prosecution, the defendant might well be unconcerned about details of financial bookkeeping, his eye being focused on the main objective of clearing his name. What is money against honor and liberty? In a civil case, however, a defendant can battle for every dime and penny unhaunted and uninhibited by the shadow of a criminal conviction which could blast his whole life. Thus, it is entirely unfair and improper to introduce during a civil trial the judgment of a criminal court as being conclusive of the issues raised in the civil court.

The Majority Opinion admits that: "In Pennsylvania, judgments in criminal cases for years were held inadmissible to establish the facts in a civil case," but gives no reason for changing that fundamental

rule of justice. It merely states that "the tendency of recent decisions is away from" such a rule. That to me is not enough to justify so drastic a change in the law which touches upon a man's liberties.

I do not share the apprehension voiced in the Majority Opinion that to contest the issue of money in a civil case after a criminal conviction "would be to fly in the face of reason," and it "would be a general indictment of the whole American jury system." This presupposes that a jury may never err and that a jury's verdict is like a precious vase which must not be handled for fear of breakage. In every session of this court the vase of verdicts is studied and often sent back to the factory for refusing.

The Majority states that where the lesser misdemeanors are involved, the record of the conviction may not be introduced in a civil suit involving the same subject matter. If the conviction may not be introduced where the offense is a lessor one, why should it be introduced where the offense is grave and calls for severe penalties and, in the event of an adverse civil verdict the judgment will also be a severe one?

I dissent.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

As recently as *Zubrod v. Kuhn*, 357 Pa. 200, 53 A. 2d 604 (1947) we held that the record of a defendant's conviction of criminal assault and battery was *inadmissible* in an action to recover civil damages for the same assault and battery. Today the majority holds that a conviction of a defendant in a *federal criminal court* for a violation of the *federal anti-racketeering law*, including extortion, as federally defined, is *conclusive proof* of plaintiff's right to recover from the defendant in a *state unjust enrichment action.*

The majority relies on *Pennsylvania Turnpike Comm. v. United States Fidelity & Guaranty Co.*, 412

502

Pa. 222, 194 A. 2d 423 (1963). First, we there established, at great length, that the conduct for which the public official had been criminally convicted was precisely the same conduct which, by contract, made his bondsman civilly liable to the Commonwealth. In fact, we were of the opinion that the criminal conviction itself was tantamount to a breach of the bond. Here we are left to speculate on the correlation of the precise facts supporting the federal offense and the precise facts necessary to prove the plaintiff's alleged civil action. Second, in *Pennsylvania Turnpike* we found that the identical questions involved in the civil case had been "exhaustively and conclusively litigated" in the criminal case and that the questions were thoroughly explored in a long and well conducted trial when "detailed evidence was adduced." Here, the majority merely states that defendant had "more than ample opportunity to overcome the charges lodged" and then asserts that it is "incredible in such a situation that a defendant would present less than his best defense, knowing that his failure would result in loss of substantial property, or even his liberty."

Third, in *Pennsylvania Turnpike,* before we allowed the criminal conviction to be *conclusive proof* of the facts therein established—which is another way of saying that the doctrine of collateral estoppel applied—we found that there was a substantial identity of parties. This, of course, is a prerequisite to collateral estoppel. *Helmig v. Rockwell Manufacturing Company,* 389 Pa. 21, 131 A. 2d 622 (1957). The Commonwealth was the plaintiff-prosecutor in the criminal case and the Turnpike Commission was the plaintiff in the civil case. We said "[t]he commission is an instrumentality of the Commonwealth." *Pennsylvania Turnpike Commission* case, supra, at 229. While Torrance was the defendant in the criminal case and his surety the defendant in the civil case, we held that "[t]he surety

is bound by the determination of the principal's liability." Id. at 228-9. But by no stretch of the imagination can the plaintiff in this civil case be likened unto the federal government for purposes of the identity of parties rule in the application of collateral estoppel. Therefore, the criminal conviction cannot be conclusive proof of plaintiff's right to recover in this case.

Finally, the majority would distinguish records of conviction in "minor matters" only on the supposition that "expediency and convenience, rather than guilt, often control the defendant's 'trial technique' " and that "in such cases, it is not obvious that the defendant has taken advantage of his day in court, and it would be unreasonable and unrealistic to say he waived that right as to a matter (civil liability) which was probably not within contemplation at the time of the conviction." I doubt the propriety of this conjectured distinction as much as I do the application of collateral estoppel doctrine on the conjecture that it is unbelievable that defendant will not try in a "serious" criminal case. Also, I doubt that the distinction between "major" and "minor" matters can be well drawn by courts in this area of vital importance to the litigants.

For these reasons I dissent.