452 A.2d 13

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Albert E. LEWIS, III.**

**COMMONWEALTH of Pennsylvania**

**v.**

**Albert E. LEWIS, III, Appellant.**

Superior Court of Pennsylvania.

Argued March 29, 1982.

Filed Oct. 22, 1982.

Petition for Allowance of Appeal Denied Feb. 23, 1983.

82

Leonard J. Frawley, Assistant District Attorney, Towanda, for Commonwealth.

David B. Keeffe, Sayre, for Lewis.

Before WIEAND, McEWEN and POPOVICH, JJ.

POPOVICH, Judge:

On August 25, 1980, appellee, Albert E. Lewis, III, was arrested and charged with four counts of corrupt organizations (18 Pa.C.S.A. § 911(b)(1), (2), (3), and (4)), 113 counts of commercial bribery and breach of duty to act disinterestedly (18 Pa.C.S.A. § 4108(c)) and 113 counts of tampering with records or identification (18 Pa.C.S.A. § 4104). Similar charges were also brought against one George Ardrey, an employee of North American Car Corporation, who had allegedly awarded his company's contracts to Lewis in return for kickbacks from the income that a trucking company owned by Lewis would earn from those contracts. Mr. Ardrey was tried and acquitted of all charges. Thereafter, appellee filed a pretrial motion to dismiss the charges against him on grounds of collateral estoppel. Following a hearing on the motion to dismiss, the lower court granted appellee's motion and issued an order on May 4, 1981, dismissing all of the aforesaid counts. The Commonwealth filed a timely appeal to this court. We reverse.

The illegal payments alleged to have been made by Mr. Lewis to Mr. Ardrey are identical in days and dates to those charges for which Mr. Ardrey was tried and acquitted in

March, 1981. Mr. Ardrey had not been charged with tampering with records or identification. However, a conviction of appellee on these counts would also depend on the existence or non-existence of the alleged bribery scheme.

Appellee contends that, because of Mr. Ardrey's acquittal, the Commonwealth is precluded from re-litigating the factual issue of whether or not the bribery scheme existed and whether or not payments were made since those same issues were adversely determined against the Commonwealth in the first trial. "[C]ollateral estoppel is issue preclusion. It seeks to prevent relitigation of a finally litigated issue in a subsequent proceeding between the same parties whether the same or different evidence is to be introduced." *Commonwealth v. Hude & Klinger,* 492 Pa. 600, 617, 425 A.2d 313, 322 (1980). The requirement of mutuality of estoppel, or identity of parties, has been eroded by judicial decisions. The lower court cited *Blonder-Tongue v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Oldham v. Pritchett,* 599 F.2d 274 (8th Cir.1979); and *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), in holding that mutuality was not a prerequisite to appellee's use of collateral estoppel in this case. The Pennsylvania courts have also made exceptions to the technical requirement of mutuality where collateral estoppel or *res judicata* (claim preclusion) are sought to be invoked. *See Posternack v. American Casualty Company,* 421 Pa. 21, 218 A.2d 350 (1966); *Stephenson v. Silverman,* 417 Pa. 187, 208 A.2d 786 (1965), *cert. denied* 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965); *Hurtt v. Stirone,* 416 Pa. 493, 206 A.2d 624 (1965), *cert. denied* 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965).

The lower court relied extensively on *Commonwealth v. Hude & Klinger, supra,* where two defendants were charged with perjury for allegedly lying on the witness stand in earlier jury trials in which they both had been acquitted. The Supreme Court held that the credibility of these defendants had already been decided when they denied committing the offenses for which they were charged and the juries

chose to believe these denials. In its analysis of *Hude &
Klinger* the Pennsylvania high Court relied on *Ashe v.
Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970),
where the United States Supreme Court held that collateral
estoppel is part of the Fifth Amendment's guarantee against
double jeopardy and is applicable to the states through the
Fourteenth Amendment. In the instant case, the lower
court felt that collateral estoppel was applicable since the
issue of giving or accepting bribes is substantially identical
in both the *Ardrey* case and the *Lewis*case, and because the
Commonwealth had a full and fair opportunity to litigate
the issues in the earlier case before a final judgment on the
merits was entered. At the May 4, 1981 hearing on appel-
lee's motion to dismiss, the assistant district attorney as-
signed to both the *Ardrey* and *Lewis* cases testified that the
two key witnesses who testified in the *Ardrey* case would
also be the chief witnesses in the Commonwealth's case
against Mr. Lewis. (N.T. May 4, 1981, p. 16, 17).

The comparison between *Hude & Klinger* and the situa-
tion we are now presented with is appealing, but there is an
important distinction between the two cases with which the
lower court did not come to terms. *Hude & Klinger* in-
volved later prosecutions of the *same parties,* not, as is
presented instantly, prosecution of different parties arising
out of the same transaction or occurrence. Although the
lower court cited cases which make exceptions to the mutu-
ality rule, those cases are all on the civil side. This appeal is
based solely on the question of whether or not the doctrine
of *nonmutual* collateral estoppel should be extended to *crim-
inal* prosecutions, a question of first impression for the
Pennsylvania courts.

The United States Supreme Court was recently confront-
ed with this precise issue in a case whose facts are strikingly
similar to the instant case. In *Standefer v. United States,*
447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the United
States Supreme Court refused to extend the doctrine of

nonmutual collateral estoppel to criminal prosecutions.[1] Standefer was indicted on four counts of making gifts to an agent of the Internal Revenue Service in violation of 18 U.S.C.A. § 201(f), and on five counts of aiding and abetting a revenue officer in accepting compensation in addition to that authorized by law, in violation of 26 U.S.C.A. § 7214(a)(2) and 18 U.S.C.A. § 2. Prior to the filing of these indictments the I.R.S. agent was acquitted of some of the violations for which Standefer was accused of aiding and abetting. For this reason, Standefer filed a motion to dismiss the counts charging him with aiding and abetting those offenses which the I.R.S. agent had been acquitted of. The Court, in distinguishing between civil cases and criminal cases, stated:

"This, however, is a criminal case, presenting considerations different than those in *Blonder-Tongue* or *Parklane Hosiery*. First, in a criminal case, the Government is often without the kind of 'full and fair opportunity to litigate' that is a prerequisite of estoppel. Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt, cf. Fed.Rule Civ. Proc. 50; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence, cf. Fed.Rule Civ.Proc. 59; and it cannot secure appellate review where a defendant has been acquitted. (cite omitted)....

The application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion unique to our criminal law. It is frequently

1. The brief that defense counsel submitted to the lower court in support of appellee's motion to dismiss failed to distinguish or even cite *Standefer*. The Commonwealth did not file a brief in opposition to the motion to dismiss. The ensuing opinion of the lower court also failed to mention the *Standefer* case. This Court is of the belief that had the lower court been apprised of *Standefer,* this case would already have been tried.

true in criminal cases that evidence inadmissible against one defendant is admissible against another. The exclusionary rule, for example, may bar the Government from introducing evidence against one defendant because that evidence was obtained in violation of his constitutional rights. And the supression of that evidence may result in an acquittal. The same evidence, however, may be admissible against other parties to the crime 'whose rights were (not) violated.' (citations omitted). In such circumstances, where evidentiary rules prevent the Government from presenting all its proof in the first case, application of nonmutual estoppel would be plainly unwarranted. . . .

Finally, this case involves an ingredient not precise in either *Blonder-Tongue* or *Parklane Hosiery:* the important federal interest in the enforcement of the criminal law. *Blonder-Tongue* and *Parklane Hosiery* were disputes over private rights between private litigants. In such cases, no significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and there is no sound reason for burdening the court with repetitive litigation . . . .

In short, this criminal case involves 'competing policy considerations' that outweigh the economy concerns that undergird the estoppel doctrine. (citations omitted)" *Standefer, supra,* 100 S.Ct. at pp. 2007, 2008.

Appellee argues that the *Standefer* case is inapposite to the case at bar because no evidence was suppressed nor excluded in the case of *Commonwealth v. Ardrey,* there was no evidence admissible against one defendant that was admissible against another, the weight of the evidence in the case of *Commonwealth v. Ardrey* was not in favor of the Commonwealth, and because the Commonwealth elected to try the case of *Commonwealth v. Ardrey* before the case of *Commonwealth v. Lewis.*[2] Although these circumstances

**2.** Although the key witnesses in both cases are the same, see f.n. 1, *supra,* it should be noted that the assistant district attorney representing the Commonwealth in both prosecutions is of the opinion that certain "fairly substantial" statements allegedly made by Mr. Lewis, but excluded as hearsay at the trial of Mr. Ardrey, would

are not insignificant, we remain pursuaded by the policy considerations that influenced a unanimous Supreme Court to limit nonmutual collateral estoppel to civil cases. In *Standefer,* as to two specific payments, the I.R.S. agent tried in the earlier case was convicted of receiving something of value "because of any official act performed . . . by him," 18 U.S.C. § 201(g), but was acquitted of receiving "any fee, compensation, or award . . . for the performance of any duty," 26 U.S.C. § 7214(a)(2). The Supreme Court could not explain these seemingly irreconcilable determinations and found this inconsistency to be reason, in itself, for not giving preclusive effect to the earlier acquittal. *Standefer, supra,* 100 S.Ct. at 2007 n. 17. The Court stated that, "this case does no more than manifest the simple, if discomforting, reality that 'different juries may reach different results under any criminal statute. This is one of the consequences we accept under our jury system.' *Roth v. United States,* 354 U.S. 476, 492, n. 30, 77 S.Ct. 1304, 1313 [n. 30], 1 L.Ed.2d 1498 (1957)." *Id.* 100 S.Ct. at 2008, 2009.

Although a jury acquitted Mr. Ardrey of accepting any bribes, it is not inconceivable that another jury may convict appellee of paying bribes. We hold that the Commonwealth's interest in enforcing the criminal laws of this state outweighs the policies underlying the doctrine of collateral estoppel.

Reversed and remanded for trial.

come in as evidence in the trial of Mr. Lewis as the statements of a party opponent. (N.T. May 4, 1981, pp. 20, 21).