## Luzerne National Bank v. Hanover Insurance Company

*Howard M. Levinson,* for plaintiff.

*S. Gordon Elkins and Jeffrey A. Lutsky,* for defendant.

*Francis G. Wenzel Jr.,* for additional defendant.

HOURIGAN, *P.J.,* November 18, 1988—

### NATURE OF PROCEEDINGS

The following matters are before the court for disposition: a motion by plaintiff, the Luzerne National Bank, for partial summary judgment; a motion by

defendant, The Hanover Insurance Company, for summary judgment; and jointly-filed on behalf of the additional defendants, a motion for reconsideration of this court's order of February 3, 1987 and a petition for certification of an interlocutory order.

## HISTORY OF THE CASE

The bank commenced suit against Hanover on September 11, 1984 by praecipe for writ of summons, and subsequently filed a complaint on November 8, 1984. The bank seeks recovery from Hanover under a "bankers blanket bond" which Hanover issued to the bank, wherein Hanover agreed to indemnify the bank for loss resulting directly from dishonest or fraudulent acts of the bank's employees. In its complaint, the bank alleges that William Heidel, its former chief executive officer and executive vice president, committed various acts of fraud and dishonesty which resulted in a loss to the bank of $282,070.60.

On December 17, 1984, Hanover filed an answer and new matter to the complaint, denying liability and raising a number of defenses. Thereafter, Hanover filed a third-party complaint against 12 additional defendants, including Mr. Heidel. All of the additional defendants were directors and/or officers of the bank at various times during or subsequent to the period when the acts of fraud and dishonesty allegedly took place. Hanover's complaint essentially alleges that the additional defendants negligently breached their fiduciary duties to the bank. The additional defendants answered Hanover's complaint. Subsequently, the additional defendants, with the exception of Mr. Heidel, filed a motion for summary judgment; this motion was denied by this court in an order dated February 3, 1987.

## DISCUSSION AND LAW

*The Bank's Motion for Partial Summary Judgment*

On December 24, 1986, the bank filed its motion for partial summary judgment against Hanover. The bank's motion is based upon a federal jury's finding of guilt against Mr. Heidel on 37 counts of misapplication of bank funds, in violation of 18 U.S.C. §§656 and 2.* The guilty verdict was returned on November 1, 1985, after a four-day trial. As a result of this criminal conviction, Mr. Heidel was sentenced by the court to a period of imprisonment of 18 months, followed by five years of probation; the court also ordered Mr. Heidel to make restitution to the bank in the amount of $212,765.17. In its motion for partial summary judgment, the bank contends that Mr. Heidel's conviction on 37 counts of "bank fraud" is "conclusive in this civil case, thus establishing the liability of Hanover to the bank in the amount of $212,765.17."

In Pennsylvania, for years, judgments in criminal cases were held inadmissible to establish the facts in a civil case. See *Estate of Gartner,* 94 Pa.Super. 45 (1928); *Commmonwealth to use of Blanche Bruce v. Moran,* 251 Pa. 477, 96 Atl. 1089 (1916); *Zubrod v. Kuhn,* 357 Pa. 200, 53 A.2d 604 (1947). This rule, however, is subject to numerous exceptions, and the tendency is to abandon any general rule of exclusion applicable to all criminal judgments and to approach the problem from the point of view of the particular judgment of conviction. *Mineo v. Eureka Security Fire and Marine Insurance Co.,* 182 Pa. Super. 75, 125 A.2d 612 (1956);

---

* 18 U.S.C §2 relates to principals and applicable punishment; 18 U.S.C. §656 deals with misapplication of funds per se.

*Pennsylvania Turnpike Commission v. United States Fidelity and Guaranty Co.,* 412 Pa. 222, 194 A.2d 423 (1963); *Hurtt v. Stirone,* 416 Pa. 493, 206 A.2d 624 (1965).

The bank relies heavily upon *Pennsylvania Turnpike, supra,* wherein our Supreme Court considered whether the criminal judgment of conviction against a James Torrance, a member and officer of the Turnpike Commission, was conclusive evidence of the commission's surety's liability under a fidelity bond, which bond covered the acts of Torrance as an employee of the Turnpike Commission. It was held that under the particular circumstances of the case, Torrance's prior criminal conviction was conclusive as to his liability and the liability of his surety bondsman in a civil suit on the bond. This decision was very narrowly drawn by the court, and it rests upon three specific findings. First, the court found that the conduct for which Torrance had been criminally convicted was *precisely* the same conduct which, by contract, made his bondsman civilly liable to the commonwealth. Second, the court found that identical questions involved in the civil case had been "exhaustively and conclusively litigated" in the criminal case and that the questions were thoroughly explored in a long and well-conducted trial. Third, before allowing the criminal conviction to be conclusive proof of liability, the court found that there was a substantial identity of the parties.

In determining the applicability of *Pennsylvania Turnpike* to the instant matter, we shall first consider whether the conduct for which Heidel was convicted is precisely the same conduct which would result in civil liability to Heidel and to the surety. As indicated above, in the criminal action of *U.S. v. Heidel,* (D.C. Pa., No. 85-00089), Mr. Heidel was found guilty by jury of 37 counts of misapplication

of bank funds, in violation of 18 U.S.C. §§656 and 2. In order to sustain a conviction under section 656, the prosecution must establish the three elements of this crime beyond a reasonable doubt: (1) defendant is an officer of a national bank insured by the FDIC; (2) defendant willfully misapplied the funds of the bank; and (3) defendant acted with the intent to injure and defraud the bank. The jury's verdict of guilty against Mr. Heidel indicates that each of the aforesaid elements of section 656 was proven beyond a reasonable doubt. *Commonwealth v. Moon,* 151 Pa. Super. 555, 30 A.2d 704 (1929).

Thus, while the jury's verdict establishes that each element of the crime of misapplication of bank funds was proven against Mr. Heidel beyond a reasonable doubt, the question in determining the applicability of *Pennsylvania Turnpike* to the instant case is whether that conduct is precisely the same conduct as would result in a civil liability on the bond. The bank claims liability under Insuring Agreement (A) of the bond, which covers against "loss resulting directly from dishonest or fraudulent acts of an employee. . . ." Dishonest or fraudulent acts are defined in the bond as "only dishonest or fraudulent acts committed by such employee with the manifest intent (a) to cause the insured to sustain such loss, and (b) to obtain financial benefit for the employee or for any other person or organization intended by the employee to receive such benefit." Thus, for conduct to result in civil liability on the bond, it must be established that the employee acted with "manifest intent" to cause a loss.

As indicated above, for a criminal conviction to be sustained under section 656, it must be proven beyond a reasonable doubt that defendant acted ith the intent to injure and defraud the bank. *U.S. v. Krepps,* 605 F.2d 101 (3d Cir. 1979). However,

proof of a reckless disregard of the interests of the bank is equivalent to ·intent to injure or defraud. *U.S. v. Krepps, supra,* at 104. Judge Nealon's opinion and order disposing of Heidel's motion for judgment of acquittal and/or motion for a new trial states that there is evidence to support the jury's finding that Mr. Heidel acted in reckless disregard of the bank's interests in his handling of certain accounts. As such, the proof was sufficient to sustain the criminal conviction. However, while Judge Nealon's opinion suggested that the evidence may go so far as to establish conduct amounting to outright abstraction of funds, the only conclusion which we can draw, without speculation, as to this element of the offense is that the minimum quantum of proof necesary for conviction, that of reckless disregard, was established by the evidence.

Thus, based upon the foregoing, in order to determine *Pennsylvania Turnpike's* applicability to the instant matter, we must now decide whether a reckless disregard of the interests of the bank, the conduct for which Mr. Heidel was convicted, is precisely the same conduct as a manifest intent to cause a loss to the bank, the conduct necessary to impose liabiity on the bond. Hanover argues that a greater quantum of proof is necessary to establish a manifest intent than is necessary to establish "reckless disregard." In support of its position, Hanover cites a number of decisions which, in sum, indicate that while "reckless disregard" would constitute "dishonesty" as that term was defined in older fidelity bonds, under the current definition of "dishonesty," which requires manifest intent, conduct amounting to a reckless disregard would not be covered. See *Mortell v. Insurance Company of North America,* 458 N.E.2d 1922 (1983); and *Verex Assurance Inc. v. Gate City Mortgage Company et al.* (D.C. Utah, Civil no. C-83-0506W).

In analyzing this issue, we cannot say that a "reckless disregard" involves precisely the same conduct as a manifest intent. As such, we find *Pennsylvania Turnpike* distinguishable from the case at bar, insofar as this case requires that the conduct for which criminal liability is imposed be precisely the same conduct as would result in civil liability on the bond. Accordingly, we cannot find that Mr. Heidel's criminal conviction is conclusive of the surety's liability to the bank on the bond. Whether the manifest intent necessary for the imposition of civil liability exists in the instant matter is a question of fact for the jury. Given the existence of this genuine issue as to a material fact, summary judgment cannot be granted in this matter. *Bertani v. Beck,* 330 Pa. Super. 248, 479 A.2d 534 (1984). While judgment cannot be rendered upon the whole case on the bank's motion, the court has the power under Pa. R.C.P. 1035(c) to make an order specifying the facts that appear without substantial controversy and to direct such further proceedings in the action as are just. The term "partial summary judgment" is frequently used to describe the procedure under rule 1035(c), but such denomination is technically a misnomer in that under subsection (c), there is no judgment at all entered; rather, a court is directed to enter "an order" in conformity with the subdivision. In essence, subdivision (c) assumes that the motion for summary judgment will fail in the sense that it will not dispose of the controversy. This is the situation in the instant case. "Primarily, [such a rule's] purpose seems to be to salvage some results from the judicial effort involved in the denial of the motion for summary judgment." *Yale Transport Corp. v. Yellow Truck & Coach Mfg. Co.,* 3 F.R.D. 440 (S.D.N.Y. 1944).

The spirit and intent of rule 1035(c) imposes a substantial burden upon this court. We are directed to examine the pleadings, depositions, admissions, affidavits, and other documents, and if practicable, to ascertain the facts which exist without controversy and make an order specifying such facts. This way, constructive results can be achieved from considerable time devoted to the determination of the motion. In our foregoing examination of Mr. Heidel's federal conviction, while we could not go so far as to find Mr. Heidel's criminal conviction to be conclusive as to the surety's liability on the bond, we did recognize that the jury's verdict establishes that each essential element of the offense of misapplication of bank funds was proven beyond a reasonable doubt. We will, then, for the purpose of our order pursuant to rule 1035(c), find that Mr. Heidel's conviction is conclusive in the instant case of the facts necessary to sustain his conviction, i.e. that Mr. Heidel was an officer of a national bank insured by the FDIC; that he willfully misapplied the funds of the bank; and, that he acted in reckless disregard of the interests of the bank. This finding is in conformity with *Hurtt v. Stirone, supra,* and the other cases cited above which recognize the abandonment of a general rule of exclusion applicable to all criminal judgments and approach the question of the conclusivity of the prior conviction in the subsequent civil action from the point of view of the particular judgment of conviction. While we find the facts to be conclusively established, we find the amount of damages to be in controversy and will make no order regarding the same.

### Hanover's Motion for Summary Judgment

Also before the court is Hanover's motion for summary judgment. Hanover contends that it is en-

titled to summary judgment on the grounds that the bank's action is untimely in that the bank failed to bring suit within 24 months from the date of discovery of its losses as required by the bond; and alternatively, that the bond was terminated and ineffective as to the bank's dishonest employee at the time when the bank alleges that it discovered its losses.

The principles pertinent to summary judgment, briefly mentioned above, are well known: Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa. R.C.P. 1035(b). In making this determination, a court must heed the following principles:

"The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. In determining whether the moving party has met this burden, the court must examine the record in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Summary judgment should be granted only in the clearest case, where the right is clear and free from doubt." *Bertani v. Beck,* 330 Pa. Super. at 251-2, 479 A.2d at 535-6. Each of Hanover's contentions revolves around a determination of when the bank discovered its losses. Hanover has taken the position that the facts cited in its affidavits and the pleadings demonstrate that the bank discovered Heidel's dishonesty and the loss "between 1980 and no later than January, April or June 1982." The bank contends that it was not until Sep-

tember 16, 1983 that it discovered its losses. In reviewing the copious materials of record, we find that there is a genuine controversy as to the time of the discovery of the loss. The issue is far from clear, and we believe that reasonable men could differ as to determining the time of the loss. Accordingly, the resolution of this issue is particularly well suited for determination by a jury, not by summary proceedings.

## Additional Defendants' Motion for Reconsideration and Petition For Certification of Interlocutory Order

The final matter before the court is the additional defendants' motion for reconsideration and petition for certification of interlocutory order. The additional defendants have first requested the court to reconsider its order of February 3, 1987, wherein the court denied the additional defendants' motion for summary judgment. The central issue in that motion concerned the right of subrogation asserted by Hanover against the additional defendants for their alleged negligence in failing to discover Mr. Heidel's fraud. In the aforesaid order and opinion of February 3, 1987, the court recognized Hanover's right of subrogation against the additional defendants for losses sustained by the bank, which losses allegedly were to some extent caused by the negligence of the additional defendants.

The additional defendants' request for reconsideration is based upon this court's alleged reliance upon the bench opinion of Judge Vanartsdalen in *Germantown Savings Bank v. United Pacific Insurance Co.,* Civil Action no. 84-5639 (E.D. Pa., Bench Opinion of July 31, 1985). The additional defendants' motion relies upon dicta in *Germantown Savings,* which they suggest indicates that subrogation

against an entire board of directors would not have been permitted.

First, we must recognize that such suggestion is speculative and is based solely upon dicta. Further, while we discussed *Germantown Savings* in our opinion, it was cited solely for propositions which supported our adoption of the reasoning of *Manufacturers Bank and Trust Co. of St. Louis, Missouri v. Transamerica Insurance Co.,* 568 F. Supp. 790 (1983) and *FDIC v. National Surety Corp.,* 434 F. Supp. 61 (E.D.N.Y. 1977).

In adopting the reasoning of *Manufacturers Bank* and *FDIC,* we declined to follow a line of cases including *First National Bank of Columbus v. Hansen,* 84 Wisc. 422, 267 N.W.2d 367 (1978), cited by the additional defendants; this case held that a fidelity carrier could not maintain a subrogation action against bank officers and directors for negligence in connection with the failure to supervise a fellow officer who defrauded the bank. *Hansen* was extensively discussed in *Manufacturers* and was rejected by the *Manufacturers* court, which reasoned that, by denying recourse against third parties responsible for or contributing to a loss which might otherwise have been avoided, the surety is denied the rights of an ordinary subrogee. The *Manufacturers* court stated, and we agree, that the better view permitting subrogation was expressed in *FDIC,* as follows:

"Courts in New York have held that 'a surety or liability insurer is subrogated to the rights of the creditor against third parties whose wrongs have compelled the surety or insurance company to make payment.' This principle is sound, for if an insurance company pays on a bond, it should step into the shoes of the corporation and should be able to

assert claims of the corporation against third parties. To hold otherwise would mean that if the bonds covered the total loss of the corporation, no one would have a cause of action against third parties such as the directors who may have contributed to the loss. The corporation could not sue because it would be fully reimbursed, and the insurance companies could not sue because they would have no standing." *FDIC, supra,* at 63. In light of the foregoing, we remain persuaded that our decision of February 3, 1987 reflects the better view, and as such, we decline to change our position.

Regarding the additional defendants' petition for certification, we are governed by 42 Pa. C.S. §702(b), which states:

"When a court or other government unit, . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order."

The additional defendants' request is based solely upon their representation that the aforementioned subrogation issue is one of first impression in Pennsylvania. Insofar as the requisite showing that an immediate appeal may advance the ultimate termination of the matter has not been made, we cannot certify this matter for interlocutory appeal. Lacking this requisite showing under section 702(b), we find that appellate review would be better served by having all issues raised at trial initally reviewed by the trial court.

## ORDER

It is hereby ordered and decreed as follows:

(1) Plaintiff's motion for partial summary judgment is denied;

(2) Original defendants' motion for summary judgment is denied;

(3) Additional defendants' motion for reconsideration is denied;

(4) Additional defendants' petition for certification of interlocutory order is denied.

It is further ordered, pursuant to rule 1035(c), Pennsylvania Rules of Civil Procedure, that the following facts are deemed to be established for all purposes in this action, and that trial be conducted accordingly:

(1) That William Heidel was an officer of the Luzerne National Bank, which bank is insured by the FDIC.

(2) That William Heidel willfully misapplied funds of the Luzerne National Bank.

(3) That William Heidel acted at least in reckless disregard of the interests of Luzerne National Bank.