**Joseph GAITO, Plaintiff,**

v.

**Samuel STRAUSS, Edward E. Fagan, Ralph B. Miller, Gregory Scorzafave, Jr., Edward C. Boyle, William Clany Smith, Dennis Timpona, Mike Levine, Robert W. Duggan, Edwin J. Martin, et al., Defendants.**

**Civ. A. No. 65-1018.**

United States District Court
W. D. Pennsylvania.

Feb. 3, 1966.

---

Joseph Gaito, pro se.

A. Morris Ginsburg, Pittsburgh, Pa., for defendant Strauss.

Thomas J. Reinstadtler, Jr., of Egler, McGregor & Reinstadtler, Pittsburgh, Pa., for defendant Levine.

Barry E. Wood, Pittsburgh, Pa., for defendants Scorzafave and Miller.

Emanuel Goldberg, Pittsburgh, Pa., for defendant Timpona.

Maurice Louik, County Sol., Pittsburgh, Pa., for defendants Fagan, Boyle, Smith, Duggan and Martin.

MARSH, District Judge.

Plaintiff, a citizen of Pennsylvania incarcerated in the Eastern State Correctional Institution at Philadelphia, has filed a 46-page typewritten "Complaint in Equity" against the ten above-named citizens of Pennsylvania, claiming $500,-000 damages under 42 U.S.C. §§ 1983 and 1985(2, 3)[1] for alleged deprivation of his constitutional rights, privileges and immunities and praying for "relief from the illegally contrived judgment of 27 years imprisonment framed through the illegal conduct by the respective defendants, and others." Jurisdiction of his federal claims is correctly asserted under 28 U.S.C. §§ 1331 and 1343(3);

1. "§ 1983. Civil action for deprivation of rights

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

"§ 1985. Conspiracy to interfere with civil rights—Preventing officer from performing duties

" * * *

"(2) * * * [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, * * *;

"(3) If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. R.S. § 1980."

pendent jurisdiction of allegedly related non-federal claims is asserted under the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

Defendant Boyle served as the District Attorney of Allegheny County in this district from January, 1956 through January 3, 1964. Defendant Duggan has held that office since January 4, 1964. Defendant Strauss was Boyle's First Assistant District Attorney. Defendant Smith served as an assistant district attorney under Boyle and briefly thereafter under Duggan. Defendant Fagan has been an assistant district attorney of Allegheny County since some time prior to November, 1959. Defendant Martin is an assistant district attorney under Duggan. Defendant Miller has at all times pertinent been police chief in the Borough of Dormont, Allegheny County, and defendant Scorzafave a Dormont police officer. Defendant Timpona was an Allegheny County detective in 1959. Defendant Levine has been a special events radio news reporter since some time prior to February 28, 1959.

The complaint alleges that on February 28, 1959 and thereafter, the defendants and others conspired together for the purpose of impeding, hindering, obstructing and defeating the due course of justice in the Commonwealth of Penn-sylvania, with the willful intent of depriving plaintiff of the equal protection of the laws and for the purpose of depriving him of his right to the due process of law; that the complained of acts (specified hereafter) were in accordance with said conspiracy and were willful, malicious and designed to discriminate against him, and to deprive him of his rights, privileges, and immunities under the Constitution of the United States.[2]

Specifically, plaintiff alleges that on Saturday afternoon, February 28, 1959, he was illegally arrested and searched by Allegheny County detectives who were acting upon orders from the defendant Strauss and Ted Botula, the acting Chief of Detectives.[3] He alleges that he was involuntarily removed to the County Detective Bureau in Pittsburgh where he was forced to strip and to permit chemical tests to be made upon his clothing and his hands, and required to don substitute clothing. He was then driven out to the suburban Dormont police station and interrogated concerning the possible involvement of his younger brother, Frank Gaito, in the shooting of Scorzafave, a Dormont police officer, during the perpetration of a burglary at the latter's home.[4] Although refused "counsel", "denied his right to remain silent", and "as-

2. Our concern, actually, is with 42 U.S.C. § 1983 and its applicability to denials of due process of law. The complaint fails to state facts indicating any purposeful discrimination against plaintiff as a person or as a member of a class of persons so as to give rise to a claim that he was denied or deprived of equal protection of the laws or of equal privileges and immunities under the laws. Norton v. McShane, 332 F.2d 855, 862–863 (5th Cir. 1964); Bargainer v. Michal, 233 F.Supp. 270 (N.D.Ohio 1964); Pugliano v. Staziak, 231 F.Supp. 347, 351, f.n. 4 (W.D.Pa.1964), aff'd 345 F.2d 797 (3d Cir. 1965).

3. He also contends that such detectives illegally searched and seized a certain 1958 Chevrolet Station Wagon. However, he fails to indicate in any *rational* manner that evidence obtained by an illegal search and seizure of that vehicle or any other vehicle was used against him in the 1959 trial. The trial transcript pages cited by him in his complaint and brief fail to support his contentions in this respect. Indeed, it does not appear that he had a sufficient proprietary interest in the 1958 Chevrolet Station Wagon or any other such vehicle to challenge such evidence if it *had* been offered (T. [Transcript of November, 1959 criminal trial], pp. 472–473, 486, 490, 547).

4. Frank was found sprawled in a driveway at Mercy Hospital, Pittsburgh, in the very early hours of February 28, 1959, in critical condition from a bullet wound in his abdomen. Scorzafave had shot one of the burglars "in the stomach" (T., p. 34) several hours before, and in the exchange of gunfire had himself been shot in the chest.

saulted" by Botula,[5] he alleges that he steadfastly remained uncommunicative except insofar as he was induced "by promise" to give a signed written statement which purported to alibi both his brother and himself. Sometime during that Saturday evening, the complaint continues, plaintiff was spirited away to the Upper St. Clair Township police station and detained there incommunicado over the weekend. Monday morning, he was returned to the County Detective Bureau and interrogated into the afternoon by defendant Strauss, who, along with Police Chief Miller, is characterized as a "controlling authority and director" of the conspiracy. This interrogation was unsuccessful, concedes plaintiff, despite Strauss' threats that he would mobilize all the forces under his control to personally prosecute and convict both plaintiff and Frank Gaito in the event that plaintiff's uncooperative attitude persisted. Sometime Monday afternoon, having been deliberately attired by the defendants in clothing of the type which Scorzafave had already identified one of his assailants as wearing,[6] plaintiff was taken to the St. Clair Hospital and into the hospital room where the critically wounded Scorzafave lay. There he was forced through the motions of a contrived identification designed to falsely implicate him in the burglary and the shooting of Scorzafave, in violation of his federal constitutional rights. Levine, present for the purpose of tape-recording the confrontation, witnessed the fact that Scorzafave made no "oral identification" of plaintiff;[7] but, alleges the plaintiff, Levine joined the conspiracy of officers acting under color of state law and subsequently, at the trial, "by an affirmative nod of his head" in view of the trial jury "deliberately affirmed a false fact."[8] On the evening of Tuesday, March 3, 1959, defendant Miller formally charged plaintiff with commission of the crimes of burglary, assault with intent to kill, and violation of the Uniform Firearms Act. As of that time, plaintiff alleges, he had been detained incommunicado some 76 hours, denied assistance of counsel, induced "by promise" to give a written alibi statement later used against him at the trial, forced to participate in a sham identification one-man "lineup" while wearing clothing owned by the defendants and designed to ensure that identification, deprived of his right to remain silent, and assaulted by Botula— all in the aftermath of an illegal arrest and search of his person, and an illegal search and seizure of "his property and a 1958 Chevrolet Station Wagon".[9] During the illegal detention, alleges plaintiff, a magistrate had sat daily in the building housing the Dormont police station.

Meanwhile, plaintiff avers, defendants Strauss and Timpona had extracted from the critically wounded Frank Gaito, while the latter lay semi-conscious and heavily drugged following surgery, non-volitional admissions of his own complicity in the burglary and shooting, as well as the involvement of a co-felon whom he refused to identify.

Plaintiff alleges that he was indicted, tried, convicted, sentenced and imprisoned as a result of systematic fraud, perjury, subornation of perjury, false evidence and suppression of evidence by all

---

5. At the trial, plaintiff testified that Botula "sorta twisted my arm" (T., p. 525).

6. Actually, the testimony at the trial, including plaintiff's own testimony, is consistent only with the proposition that he wore *his own* clothing to the St. Clair Hospital (T., pp. 63, 334, 531–532), and that such clothing was returned to him prior to the trial (T., pp. 554–555). While plaintiff correctly points out that Scorzafave identified the color of plaintiff's jacket as "black" whereas in fact it was some shade of "brown", plaintiff and his counsel had the prerogative at the trial to produce his jacket as an exhibit were it true that a visual comparison of it with Scorzafave's description might have benefitted plaintiff. They failed to exercise that prerogative.

7. The testimony at the trial was that the identification was indicated by a *nod of Scorzafave's head* (T., p. 134).

8. See f.n. 11, infra.

9. But see f.n. 3 and 6, supra.

of the various defendants and others operating under their control and supervision. He and his brother were tried together in November, 1959, and convicted by a jury at No. 15 Oyer & Terminer, April Term, 1959 (burglary); No. 46 Quarter Sessions, April Term, 1959 (assault with intent to kill); and Nos. 47 and 48 Quarter Sessions, April Term, 1959 (violation of the Firearms Act of 1939). Each was sentenced on July 12, 1960, to a total of 13½ to 27 years imprisonment as a result of such convictions.

Defendant Fagan prosecuted the case for the Commonwealth. Mrs. Marjorie Matson, an experienced defense counsel, represented the Gaitos. Plaintiff alleges that Fagan was a knowing participant in the conspiracy and deliberately suppressed evidence, employed false and perjured evidence, and peppered the trial with highly prejudicial remarks. Fagan is even alleged to have practiced sleight of hand with police photographs so as to mislead the jury into crediting Scorzafave's false identification of plaintiff as one of the burglar-assailants. The written "alibi" statement taken from plaintiff on February 28, 1959, allegedly under circumstances violative of the principles of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), was used as evidence at the trial to show that he and his brother were together on the evening of February 27, 1959, at the time of the burglary-shooting.[10] It is alleged that Scorzafave perjured himself at the trial (at the instiga-

tion of defendants Miller, Strauss and Fagan) by falsely identifying the Gaitos as his assailants; that Strauss and Timpona perjured themselves by testifying falsely both as to the contents and the volitional nature of the hospital bed admissions made by Frank Gaito—and that such admissions, while specifically reserving the identity of Frank's co-felon, were somehow used to implicate plaintiff as such co-felon. Plaintiff further alleged that defendant Levine nodded his head in affirmation of "a false fact" within the sight of the jury;[11] that several County Crime Laboratory technicians knowingly gave perjured testimony concerning ballistics and the results of primer residue tests applied to the Gaitos' hands on February 28, 1959—at the direction of Strauss, Miller and Fagan; that several county detectives and police officers gave unspecified perjured evidence. Plaintiff is reasonably specific in designating the alleged perjured testimony given and/or sanctioned by certain defendants, but falters badly in specifying the evidence allegedly suppressed by them. He employs the terms "perjured" and "suppressed" interchangeably. For completeness sake, he insinuates the complicity of Mrs. Matson in the conspiracy and asserts (par. 48) that she "in effect, aided and abetted the corporate [?] defendants."[12] It is also asserted that Fagan, at the time of sentencing (July 12, 1960), while plaintiff and his brother were unrepresented by counsel, made false representations to the sentencing judge concerning past crimes[13] in a successful endeavor to obtain imposition of

10. Plaintiff testified at the trial that the contents of such statement were untrue (T., pp. 525–528).

11. Levine did not testify. He apparently responded in the affirmative when plaintiff inquired of him at the trial whether Scorzafave had identified plaintiff at the hospital (T., p. 556). In our view, the complaint fails to state any claim against Levine upon which relief can be granted since it fails to state facts sufficiently tending to show that he, as a private individual, participated in an actionable conspiracy with officers acting under color of state law.

12. Read in context, plaintiff's averments concerning Mrs. Matson cannot be read as sufficiently alleging facts supporting an actionable claim that she conspired with officers acting under color of state law to deprive him of his constitutional rights. Mrs. Matson appears no less amenable to suit in this district than the named defendants; yet plaintiff has not sued her.

13. On July 23, 1959, while awaiting trial for the crimes involved here, plaintiff teamed with Edward J. Kern in the armed robbery of a Pittsburgh bank. Their flight from the bank was aborted in

the maximum sentences prescribed by law.

Toward the end of the complaint, plaintiff asserts sundry claims of denials of due process of law against his trial judge and certain other state judges associated with his unsuccessful direct appeal and various habeas corpus and mandamus petitions, unnamed penal authorities who have allegedly interfered with his access to the courts and against the defendants, Boyle, Duggan, Smith and Martin, for conspiratorially resisting and frustrating his post-conviction attempts at a new trial by filing late briefs and setting forth in such briefs deliberate distortions of the applicable facts and law, by procedural harassment and by conspiring with the unnamed penal authorities to interfere with plaintiff's access to the courts. He alleges that he was without counsel at the time of his sentencing and that the State Superior Court denied him due process by failing to appoint counsel for him in the prosecution of his direct appeal; that he did not waive assistance of counsel at either time.

Plaintiff avers his innocence of the crimes in question; that the defendants knew of his innocence, but falsely managed and procured his conviction in re-

prisal for his refusal to cooperate in their investigation of Frank Gaito.[14]

Aside from his loss of liberty, plaintiff claims that the illegal conspiracy of the defendants, as effectuated, has caused great humiliation and embarrassment to himself and his family, and great damage to his business and reputation, as well as a considerable outlay for counsel fees.

In ¶ 69 of the Complant, plaintiff concedes that he sought to file a similar suit in forma pauperis in this court at Misc. No. 3323, 1963. Another member of this court permitted the filing of the "papers", but dismissed the complaint, stating it to be apparent that "there is no merit whatsoever in the proposed law suit" and "the complaint does not present any substantial question worthy of consideration." The named defendants in that complaint were Strauss, Fagan, Miller, Boyle, and the criminal court trial judge, Hon. Edwin M. Clark of Indiana County. The plaintiff's complaint and application to proceed in forma pauperis, together with the memorandum and order dismissing the complaint, were filed on October 11, 1963. On December 3, 1963, the Court of Appeals denied plaintiff's petition for leave to prosecute his appeal in forma pauperis.[15] Certiorari

the infamous "Battle of Chicken Hill", during which two Pittsburgh police officers (Robert W. Thompson and Anthony Paga) were seriously wounded. Indictments were returned against plaintiff and Kern on September 17, 1959 at Nos. 275, 286, 287, 288 and 289 Quarter Sessions, September Term, 1959; No. 431 Quarter Sessions, November Term, 1959; and No. 89 Oyer & Terminer, September Term 1959. The indictments charged armed robbery (No. 89), assault with intent to kill Thompson (No. 288), assault with intent to kill Paga (No. 289); and other asserted felonious assaults and firearms violations. Plaintiff was tried before a jury commencing February 8, 1960, found guilty on all counts, and on February 19, 1960 was sentenced to a term of 17 to 37 years imprisonment which he was in the process of serving on July 12, 1960. It is evident from plaintiff's brief that he contends that Fagan made false representations concerning the shooting of Thompson and Paga. It is just as evident from the

above and from the transcript of the sentencing (T., pp. 750–751) that plaintiff's said contention is utterly devoid of merit.

14. The criminal proceedings here involved have been attacked before. See: 195 Pa.Super. 356, 172 A.2d 184, cert. denied 368 U.S. 998, 82 S.Ct. 623, 7 L.Ed.2d 535; 416 Pa. 199, 204 A.2d 758; 205 Pa.Super. 739, 209 A.2d 444; 206 Pa. Super. 113, 210 A.2d 907; 324 F.2d 673 (3d Cir.); 312 F.2d 169 (3d Cir.), cert. denied 374 U.S. 816, 83 S.Ct. 1711, 10 L.Ed.2d 1039; 213 F.Supp. 508 (E.D.Pa. 1963), cert. denied 375 U.S. 859, 84 S. Ct. 125, 11 L.Ed.2d 86.

15. The record in Misc. No. 3323 indicates that the Clerk of the Court of Appeals wrote to plaintiff advising him of that court's action and informing him that he still had time to prosecute his appeal as a matter of right by submitting the prescribed fee. Plaintiff never availed himself of the latter opportunity.

was denied on May 4, 1964. 377 U.S. 925, 84 S.Ct. 1223, 12 L.Ed.2d 216.

All defendants have moved to dismiss. Each, excepting Levine, contends that this court lacks jurisdiction of the subject matter; alternatively, in the event that jurisdiction exists, that this court should exercise abstention. Each defendant contends that the complaint fails to state any claim against him upon which relief can be granted. Defendants Strauss, Miller, Scorzafave, Levine and Timpona contend that this action is barred by certain statutes of limitation, to-wit, 12 Purdon's Pa.Stat.Ann. §§ 34 and 51. Defendants Strauss and Timpona contend that the judgments in the criminal proceedings at No. 15 O. & T. April Term, 1959, and Nos. 46 and 47 Q. S. April Term, 1959, are conclusive here as to the issues litigated and adjudicated therein. Defendants Duggan, Boyle, Fagan, Smith and Martin contend that the determination at Misc. No. 3323 in this court should be followed here under the principle of stare decisis, while defendant Strauss contends that such determination is *res judicata* as to this action. Defendants Miller, Scorzafave and Timpona appear to contend that such prior determination in this court should be given effect here under both the doctrine of *stare decisis* and the doctrine of *res judicata*.

Motions to strike the complaint have been filed by all defendants except Levine. Plaintiff, in turn, has moved to strike all of the defendants' motions.

For the reasons hereinafter expressed, we conclude that the motions to dismiss should be granted.

## ABSTENTION

◼ The contention is made that in the event this court has jurisdiction over the subject matter (quite clearly, it does), it should exercise abstention and relegate plaintiff to his state court remedies. However, the law is too well settled that the abstention doctrine has no pertinence here. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Anderson v. Haas, 341 F.2d 497, 499 (3d Cir. 1965); Beauregard v. Wingard, 230 F.Supp. 167, 185, f. n. 30 (S.D.Cal.1964). Cf. Harman v. Forssenius, 380 U.S. 528, 534–535, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Williams v. Murdoch, 350 F.2d 840 (3d Cir. 1965); Basista v. Weir, 340 F.2d 74, 84 (3d Cir. 1965).

## THE CLAIM FOR EQUITABLE RELIEF

◼ It is clear that the Civil Rights Act may not be used to circumvent the federal habeas corpus statutes. Cf. Johnson v. Walker, 317 F.2d 418 (5th Cir. 1963). While plaintiff has styled his complaint as a "Complaint in Equity", this is not the type of Civil Rights Act suit in which federal equitable intervention in state criminal proceedings has traditionally been available. See the discussions in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) and Baines v. City of Danville, 337 F.2d 579, 586–596 (4th Cir. 1964). We think that the Civil Rights Act must be read in harmony with 28 U.S.C. §§ 2241–2254. Such a reading requires the determination that the only remedy even theoretically available to plaintiff in this suit is at law for damages. We shall treat plaintiff's suit as just such a claim.

## IMMUNITY OF DISTRICT ATTORNEYS

◼ Judges and district attorneys acting in their official capacities in connection with criminal and commitment proceedings are entitled to absolute immunity from Civil Rights Act and other damage suits arising out of their judicial and quasi-judicial acts, without regard to their alleged motives in so acting, and notwithstanding such acts may have been performed in excess of jurisdiction. Byrne v. Kysar, 347 F.2d 734 (7th Cir. 1965); Heasley v. Davies, 342 F.2d 786 (8th Cir. 1965); Rhodes v. Meyer, 334 F.2d 709 (8th Cir. 1964); Agnew v. Moody, 330 F.2d 868 (9th Cir. 1964); Harmon v. Superior Court of State of California, 329 F.2d 154 (9th Cir. 1964); Hurlburt v. Graham, 323 F.2d 723 (6th

Cir. 1963); Sires v. Cole, 320 F.2d 877 (9th Cir. 1963); Kostal v. Stoner, 292 F.2d 492 (10 Cir. 1961); Stift v. Lynch, 267 F.2d 237 (7th Cir. 1959); Gay v. Heller, 252 F.2d 313 (5th Cir. 1958); Ryan v. Scoggin, 245 F.2d 54 (10th Cir. 1957); Kenney v. Fox, 232 F.2d 288 (6th Cir. 1956); Morgan v. Sylvester, 220 F.2d 758 (2d Cir. 1955); Perkins v. Rich, 204 F.Supp. 98 (D.Del.1962), aff'd 316 F.2d 236 (3d Cir. 1963); Rhodes v. Houston, 202 F.Supp. 624 (D.Neb.1962), aff'd 309 F.2d 959 (8th Cir. 1962); Hardy v. Kirchner, 232 F.Supp. 751 (E.D.Pa.1964); Ellis v. Wissler, 229 F.Supp. 196 (E.D.Pa.1964).

█ We hold that the defendants Fagan, Smith, Martin, Boyle and Duggan are immune from suit on the basis of the above-cited authorities and that the complaint thus fails to state any claim against them upon which relief can be granted. A more difficult problem arises with respect to the claimed immunity of defendant Strauss, who, it is alleged, participated in a non-privileged capacity in the investigation of plaintiff and the institution of proceedings against him. Cf. Robichaud v. Ronan, 351 F.2d 533 (9th Cir. 1965). Actually, we deem it unrealistic to so artficially compartmentalize the activities of a district attorney—particularly the *first* assistant—so as to say that his activities in interrogating a suspect are non-privileged while those activities expended in trying the case or endeavoring to sustain a conviction upon direct appeal or in collateral proceedings are privileged. All such activities should be equally privileged against damage suits. Resolution of this issue as to Strauss is unnecessary, however, since he has available to him other valid defenses, hereinafter discussed, which require a disposition of this action in his favor.

## THE AFFIRMATIVE DEFENSES

█ Issues relating to the operation of statutes of limitation, the doctrine of res judicata, and related affirmative defenses may be determined upon preliminary motion. Watson v. Commercial Credit Corporation, 341 F.2d 915 (5th Cir. 1965); Williams v. Murdoch, 330 F.2d 745 (3d Cir. 1964); Crawford v. Zeitler, 326 F.2d 119 (6th Cir. 1964); Garelick v. Goerlich's, Inc., 323 F.2d 854 (6th Cir. 1963); Swan v. Board of Higher Education of City of New York, 319 F.2d 56 (2d Cir. 1963); Baldwin v. Loew's Incorporated, 312 F.2d 387 (7th Cir. 1963); Spampinato v. City of New York, 311 F.2d 439 (2d Cir. 1962); Lambert v. Conrad, 308 F.2d 571 (9th Cir. 1962); Levy v. Hayward, 101 U.S.App. D.C. 232, 248 F.2d 152 (1957); Suckow Borax Mines Consol. v. Borax Consolidated, 185 F.2d 196 (9th Cir. 1950); Wilson v. Hinman, 172 F.2d 914 (10th Cir. 1949); Rhodes v. Meyer, 225 F.Supp. 80 (D.Neb.1963); Rhodes v. Van Steenberg, 225 F.Supp. 113 (D.Neb.1963), aff'd 334 F.2d 709 (8th Cir. 1964); Sherwin v. Oil City National Bank, 18 F.R.D. 188 (W.D. Pa.1955), aff'd 229 F.2d 835 (3d Cir. 1956); Conard v. Stitzel, 225 F.Supp. 244 (E.D.Pa.1963); Hoffman v. Wair, 193 F.Supp. 727 (D.Ore.1961).

### (A) The Limitations Bar

█ In accordance with the rule requiring the application to Civil Rights Act damage suits of the most analogous relevant state statute(s) of limitations, we hold that any federal claim that plaintiff may have had for the alleged illegal arrest and detention and related indignities sustained during the period prior to his conviction in November, 1959 is barred by the two-year limitations statute applicable to false imprisonment suits [16] and the one-year limitations statute applicable to false arrest suits.[17] The claim for damages sustained as a result of the alleged assault perpetrated by Botula is not in issue here inasmuch as Botula is not a party to this suit. Were he named as a defendant and served accordingly, he would undoubtedly have the

---

16. Jones-Burget v. Borough of Dormont, 14 F.2d 954 (3d Cir. 1926); 16 P.L.E. False Imprisonment § 5, p. 298.

17. 12 Purdon's Pa.Stat.Ann. § 51.

benefit of the two-year personal injury limitations statute with respect to such claim.[18] Plaintiff contends that his November, 1959 convictions and July, 1960 sentencing effected such consequential damages as the destruction of his business enterprise and reputation. While this allegation cannot be accurate since plaintiff was convicted of and sentenced for other unrelated crimes in February, 1960,[19] even assuming its truth, we nonetheless hold that any federal claim arising out of the criminal proceedings, convictions and sentences here pertinent is barred by the one-year statute of limitations governing malicious prosecution claims.[20] Since plaintiff cites Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), he obviously presses here common law claims for false imprisonment, false arrest, assault and battery and malicious prosecution. If we possess pendent jurisdiction of such claims here under the Hurn doctrine, such claims are *a fortiori* barred by the pertinent statutes of limitation.[21] Actually, of course, plaintiff presently has no claim for malicious prosecution inasmuch as the prior criminal proceedings which would serve as the foundation for such a claim have never terminated in his favor. Such favorable termination is the *sine qua non* of a malicious prosecution claim. Woodyatt v. Bank of Old York Road, 408 Pa. 257, 182 A.2d 500 (1962); Sicola v. First National Bank of Altoona, 404 Pa. 18, 170 A.2d 854, 87 A.L.R.2d 1044 (1961); 23 P.L.E. Malicious Prosecution § 5; Prosser, Torts, § 113, pp. 856–859 (3d ed. 1964).

■ Logically, if plaintiff now has no common law claim for malicious prosecution arising out of the criminal proceedings assailed here, neither should he be deemed to have any related federal claim as a result of such criminal proceedings and the resulting convictions, sentencing

and imprisonment. Such a claim, if valid, should by analogy be deemed to accrue only at some later date when and if he is vindicated and such convictions upset through a successful utilization of conventional post-conviction channels of relief. Cf. Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963); Horn v. Bailie, 309 F.2d 167 (9th Cir. 1962); Wakat v. Harlib, 253 F.2d 59 (7th Cir. 1958); Coleman v. Johnston, 247 F.2d 273 (7th Cir. 1957); McShane v. Moldovan, 172 F.2d 1016 (6th Cir. 1949); annotation, 30 A.L.R.2d 1128. If, however, plaintiff has properly cognizable, accrued federal claims arising out of the criminal proceedings instituted on March 3, 1959, then it must necessarily be that such claims are barred by the most analogous relevant limitations statute—i. e., the one-year Pennsylvania malicious prosecution statute. Cf. Corcoran v. Yorty, 347 F.2d 222 (9th Cir. 1965); Watson v. Commercial Credit Corporation, supra; Crawford v. Zeitler, supra; Spampinato v. City of New York, supra; Lambert v. Conrad, supra; Thompson v. Heither, 235 F.2d 176 (6th Cir. 1956); Conard v. Stitzel, supra; Hoffman v. Wair, supra; Weiner v. City & County of Philadelphia, 184 F.Supp. 795 (E.D.Pa.1960). It is plain that the goal of the alleged conspirators was achieved—and that the last overt act effectuating plaintiff's imprisonment as a result of the criminal proceedings complained of was committed—not later than the date of plaintiff's sentencing (July 12, 1960). The allegedly continuous and successful efforts by the defendants since that date—in supposed collusion with various jailors and state judges—to thwart and harass plaintiff's attempts to overturn the convictions cannot be regarded as additional overt acts in furtherance of the original conspiracy so as to interminably toll the statute of limitations with regard to the alleged fraudulent procurement of the convic-

---

18. 12 Purdon's Pa.Stat.Ann. § 34.

19. See f.n. 13, supra; United States ex rel. Gaito v. Rundle, 213 F.Supp. 508 (E.D. Pa.1963), cert. denied 375 U.S. 859, 84 S.Ct. 125, 11 L.Ed.2d 86.

20. 12 Purdon's Pa.Stat.Ann. § 51.

21. 12 Purdon's Pa.Stat.Ann. §§ 34 and 51. See also, f.n. 16, supra.

tions, but must rather be regarded as elements of continuing damage accruing from the culmination of the alleged conspiracy on July 12, 1960.[22] Thus viewed, such post-sentencing activity by the defendants does not prevent the application of the one-year statute of limitations to any alleged misbehavior by the defendants in connection with the institution, progress, and culmination of the pertinent criminal proceedings. Such misconduct on the part of defendants as is alleged relative to the post-sentencing period relates to activities of defendants Boyle, Smith, Duggan and Martin, all of whom in such connection were acting within the scope and under the protection of the quasi-judicial immunity concept applied herein. Plaintiff's views concerning interference with his mail have heretofore been expressed. Gaito v. Prasse, 312 F.2d 169 (3d Cir. 1963), cert. denied 374 U.S. 816, 83 S.Ct. 1711, 10 L.Ed.2d 1039. His present complaint states no justiciable claim as to the frivolous and wildly conclusory allegations that certain of the defendants have thwarted and interfered with his post-conviction access to the courts. It does not even appear from the complaint that the named defendants were in a position to inflict such harm upon the plaintiff.

*(B) Prior Adjudication; Criminal Trial*

██ Certain of the defendants contend that the standing judgments of conviction rendered pursuant to the criminal prosecution of November, 1959 are conclusive here as to issues litigated and adjudicated therein. We agree. Hurlburt v. Graham, 323 F.2d 723 (6th Cir. 1963); Goss v. State of Illinois, 312 F.2d 257 (7th Cir. 1963); Curtis v. Tower, 262 F.2d 166 (6th Cir. 1959); Blackmon v. Wagener, 253 F.2d 10 (6th Cir. 1958); Thompson v. Heither, supra; Crawford v. Lydick, 179 F.Supp. 211 (W.D.Mich.

1959), aff'd 280 F.2d 426 (6th Cir. 1960); Watson v. Devlin, 167 F.Supp. 638 (E.D.Mich.1958), aff'd 268 F.2d 211 (6th Cir. 1959); In re Kravitz Estate, 418 Pa. 319, 211 A.2d 443 (1965); Hurtt v. Stirone, 416 Pa. 493, 206 A.2d 624, 625 (1965); Pennsylvania Turn. Com'n v. United States F. & G. Co., 412 Pa. 222, 194 A.2d 423 (1963); 1B Moore, Federal Practice, ¶ 0.418[1], pp. 2703, 2711 (2d ed. 1965). The foregoing authorities indicate, we believe, that rigid adherence to the "mutuality of parties" concept [23] is not favored. Accordingly, we conclude that the issues of (1) plaintiff's guilt; (2) the veracity and credibility of plaintiff and his brother, Frank, vis-á-vis Gregory Scorzafave, Jr., Ralph B. Miller, Samuel Strauss and Dennis Timpona with respect to such testimony given in the criminal prosecution as was pertinent to and implicitly resolved in the jury verdicts; and (3) the authenticity and reliability of scientific proof placed in evidence on behalf of the Commonwealth were all litigated and adjudicated adversely to plaintiff in the 1959 criminal trial and that the subsisting judgments of conviction rendered pursuant to the jury verdicts therein prevent the relitigation of such issues here. The issue raised as to claimed suppression of evidence, which, obviously the criminal court jury could not have specifically resolved, nevertheless depends to some extent upon the credibility and veracity of the parties hereto as to the evidence actually before the jury. Moreover, plaintiff is entirely uninformative about the nature of any relevant, admissible and exculpatory evidence known of by any of the defendants at the time of the 1959 trial, not introduced in that trial, and not disclosed to or known of by plaintiff and his counsel. His complaint, otherwise highly specific, becomes very vague and conclusory at that particular junc-

---

22. Another and fundamental reason why the assertion of a continous conspiracy by the plaintiff cannot circumvent the bar of limitations statutes here is that he asserts a cognizable claim under 42 U.S.C. § 1983 only. That statute is concerned with actual deprivations of constitutional rights and it is wholly immaterial whether or not such deprivations were effectuated pursuant to a conspiracy

23. See: Basista v. Weir, 340 F.2d 74, 81 (3d Cir. 1965).

ture. Under the circumstances, we cannot take any cognizance of this claim. Pugliano v. Staziak, 231 F.Supp. 347 (W.D.Pa.1964), aff'd 345 F.2d 797 (3d Cir. 1965); cf. Gainey v. Brotherhood of Railway & Steamship Clerks, Etc., 313 F.2d 318, 323 (3d Cir. 1963); Temple v. Pergament, 235 F.Supp. 242 (D.N.J. 1964), aff'd 343 F.2d 474 (3d Cir. 1965). It would appear to be plaintiff's intention to prove a case here by cross-examining the defendants and certain Allegheny County Crime Laboratory technicians and by having a jury draw fantastic inferences "by reading trial transcripts and passing judgment upon whether the prosecuting attorney and defense attorney acted conspiratorially" [24] with each other and in concert with the Commonwealth's witnesses. We know of no authority that requires this court to be the forum for such a travestic denigration of existing state court criminal judgments. We might observe that Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963), relied upon in Basista v. Weir, supra, involved perversions of law in a court of inferior jurisdiction. Cf. Hurtt v. Stirone, supra, 206 A.2d at 627.

### (C) The Prior Adjudication In This Court

█ It is, of course, settled law that a decision on the merits, final and unreversed, is res judicata as to a subsequent similar suit even if the rationale of the original adjudication is asserted to be legally incorrect. It is also well settled that dismissal of an action for failure of the complaint to state any claim upon which relief can be granted generally constitutes such a decision on the merits. Sarelas v. Sheehan, 353 F.2d 5 (7th Cir. 1965); Rhodes v. Jones, 351 F.2d 884 (8th Cir. 1965); Rhodes v. Meyer, supra, 225 F.Supp. at pp. 105, 127, aff'd 334 F.2d at p. 716. An attempt to evade application of this principle by naming additional defendants in the subsequent action has no effect, usually, so long as the plaintiff is attempting to relitigate the same causes of action and

the same issues. Cf. Helmig v. Rockwell Manufacturing Company, 389 Pa. 21, 131 A.2d 622 (1957); Sopp v. Gehrlein, 236 F.Supp. 823 (W.D.Pa.1964).

Be that as it may, it is not altogether clear that the dismissal of the suit at Misc. No. 3323 can be accorded conclusive effect in this action. See: Urbano v. Calissi, 353 F.2d 196 (3d Cir. 1965); Armstrong v. Rushing, 352 F.2d 836 (9th Cir. 1965); Williams v. Murdoch, 330 F.2d 745 (3d Cir. 1964); Harmon v. Superior Court, 307 F.2d 796 (9th Cir. 1962); 1B Moore, supra, ¶ 0.409[1], p. 1006. Since we believe that there exist sufficient other reasons for dismissing this suit, we do not feel compelled to rule upon the effect of such prior litigation.

### OTHER MATTERS

█ We hold further that plaintiff has stated no federal claim upon which relief can be granted with respect to the attempted assertion of liability against the defendants arising out of reliance upon claimed retrospective application of cases such as Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964); Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963); Wong Sun v United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R. 2d 933 (1961). Plaintiff's state court convictions did not become final until certiorari was denied on February 19, 1962. Cf. Linkletter v. Walker, 381 U.S. 618, 622, f. n. 5, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Whatever relevance that fact may have in the context of a habeas corpus petition, however, it has none here. To hold that the exercise of state police and prosecutive power in a manner perfectly valid at the time of its exercise may render the law enforcement

24. Pugliano v. Staziak, supra, 231 F.Supp. p. 353.

authorities involved liable for damages through possible retrospective application of a subsequently enunciated constitutional interpretation would scarcely accord with the requirement that "Section 1979 [42 U.S.C. § 1983] should be read against the background of tort liability that makes a man responsible for the *natural consequences* of his actions."[25] Cf. Striker v. Pancher, 317 F.2d 780 (6th Cir. 1963).

Nor—bearing in mind that the 1959 trial and the convictions rendered pursuant thereto require this court to accept the authenticity of Scorzafave's hospital identification—does it appear that the procedures employed in securing such identification deprived plaintiff of any constitutional rights. Cf. Rigney v. Hendrick, 355 F.2d 710 (3d Cir. 10/15/65, reh. den. 12/9/65), aff'g Morris v. Crumlish, 239 F.Supp. 498 (E.D.Pa.1965). The critical wounds sustained by Scorzafave (the only eye-witness to the crime) and Frank Gaito and the hospital setting evidently demanded the employment of such procedures. The alleged illegal arrest does not vitiate the criminal convictions; the length of plaintiff's alleged illegal detention did not *per se* violate the Fourteenth Amendment; and, of course, the McNabb-Mallory rule does not rise to the dignity of a constitutional prohibition. Finally, it appears that various of the alleged deprivations of constitutional rights could well have been explored during the criminal prosecution by plaintiff's competent counsel of choice who, for reasons probably of a strategic nature, selected only certain grounds for defending before the jury. Cf. Henry v. State of Mississippi, 379 U.S. 443, 447–448, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Nelson v. People of State of California, 346 F.2d 73 (9th Cir. 1965); Commonwealth ex rel. Santiago v. Myers, 419 Pa. 326, 214 A.2d 206 (1965); Commonwealth ex rel. Johnson v. Myers, 419 Pa. 155, 213 A.2d 359 (1965); Commonwealth ex rel. Adderley v. Myers, 418 Pa. 366, 211 A.2d 481 (1965); Commonwealth ex rel. Fox v. Maroney, 417 Pa. 308, 207 A.2d 810 (1965). We might add that nothing in the statements elicited from Frank Gaito and used at the subsequent criminal trial can even arguably be deemed to implicate plaintiff as Frank's partner in crime. Plaintiff's tortured interpretations of such statements and of Strauss' and Timpona's testimonies relating thereto cannot benefit him here. We have explored all 753 pages of the criminal trial transcript so heavily relied upon by plaintiff in his complaint and brief and find nothing therein that would permit a jury in a Civil Rights Act suit to conclude that such a dastardly conspiracy and sham prosecution as plaintiff conjures up governed the conduct of that trial or operated to deny plaintiff a fair trial.

There is no diversity of citizenship. Hurn v. Oursler, supra, does not require a federal court to retain jurisdiction of allegedly pendent state common law claims where the federal claims are disposed of upon preliminary motion. Cf. McFaddin Express, Incorporated v. Adley Corporation, 346 F.2d 424 (2d Cir. 1965); O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964); Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1963); Rogers v. Provident Hospital, 241 F.Supp. 633, 639 (N.D.Ill.1965). Since plaintiff's federal claims are thus being disposed of, we see no point in retaining jurisdiction over any allegedly related non-federal claims.

An appropriate order will be entered denying the plaintiff's and defendants' motions to strike and granting the defendants' motions to dismiss.

25. Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961) (emphasis ours).