Glen GRAYSON, by his next friend, John Grayson, Plaintiff,

v.

Samuel EISENSTADT, Elwood S. McKenney, Charles I. Taylor, and Philip A. Tracy, Justices of the Roxbury District Court; Kessler Montgomery, Clerk of the Roxbury District Court; and Julius Goldstein, Assistant Clerk of the Roxbury District Court, Defendants.

Civ. A. No. 68–1098.

United States District Court
D. Massachusetts.

June 17, 1969.

OPINION

Michael L. Altman, Boston, Mass., for plaintiff.

Office of Atty. Gen., Bruce G. McNeill, Asst. Atty. Gen., Boston, Mass., for defendant.

JULIAN, District Judge.

This is a civil action in which plaintiff, having been convicted in the Municipal Court of the Roxbury District of three criminal offenses, seeks a declaratory judgment, 28 U.S.C. § 2201, that certain alleged actions by officers of

that court unconstitutionally coerced him into withdrawing his appeals to the State Superior Court. The amended complaint characterizes the action as one arising under the Civil Rights Act of 1871,[1] 42 U.S.C. § 1983, to redress the deprivation under color of state law of rights, privileges and immunities guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments. Jurisdiction is founded upon 28 U.S.C. § 1343(3).

The plaintiff, Glen Grayson, is an eighteen-year-old high school senior residing with his parents in Roxbury, Massachusetts. The defendants are the four Justices, the Clerk and the Assistant Clerk of the Roxbury District Court in Boston.

The gravamen of the complaint is the plaintiff's allegation that, following his being sentenced by the district court, he announced his intention to appeal, whereupon the district court increased the severity of the sentences, thereby coercing plaintiff to withdraw the appeals and to forego trials *de novo* before a jury in the Superior Court.[2] This opinion can be better understood, however, in the light of a more complete recitation of the allegations.

Specifically, the amended complaint alleges that on November 20, 1968, plaintiff was tried in the Roxbury District Court for two counts of assault and battery and one count of trespass, both of which are misdemeanors under Massachusetts law. The amended complaint further alleges that at the termination of the trial the judge found plaintiff guilty on all three charges and sentenced him to concurrent *suspended* three-month sentences on the two assault and battery convictions, with the trespassing charge placed on file. Plaintiff alleges that these sentences were announced by the judge and repeated by the Assistant Clerk in open court; that the plaintiff

was asked whether he intended to appeal; and that counsel requested that the case be put over for fifteen minutes so that plaintiff might discuss the matter with his parents and attorney.

That request was granted, the amended complaint continues, and the plaintiff after consultation determined to appeal. The amended complaint further alleges that plaintiff's attorney communicated plaintiff's decision to the Assistant Clerk, who stated that the appeal would be noted and that plaintiff and his attorney could leave the courthouse. Plaintiff alleges that his attorney did in fact leave but that immediately thereafter the Assistant Clerk again called the case and plaintiff, who had lingered in the courthouse, was again brought before the Court. Plaintiff alleges that the trial judge, upon being notified of plaintiff's intention to appeal, increased the sentence on each charge by imposing a $20 fine on the trespass charge and by revoking the suspension of the three-month sentences previously imposed. The amended complaint also alleges that the trial judge ordered that plaintiff be held on $300 bail pending trial in the Superior Court and directed that plaintiff be taken into custody immediately, whereupon plaintiff, who lacked funds with which to post bail, was placed in the courthouse jail.

The amended complaint further alleges that plaintiff's father was advised by a court officer that plaintiff would be released immediately if the appeal were withdrawn. Plaintiff alleges that upon learning this, he (plaintiff) announced to the court that he would withdraw the appeal. He alleges that the trial judge thereupon ordered plaintiff released, withdrew the $20 fine on the trespass charge, suspended the sentences on the assault and battery charges (adding two years probation) and accepted the withdrawal of the appeal.

1. 17 Stat. 13.

2. There are no jury trials in the Roxbury District Court. (Tr. 129–30.) Persons convicted of crimes in that court have

the right to appeal to the Superior Court and there to have their case tried *de novo* before a jury on the question of guilt. M.G.L. c. 278, § 2.

Finally, the amended complaint alleges that plaintiff, after returning to his home, telephoned his attorney and related what had happened; that plaintiff indicated his continued desire to appeal; that the attorney returned that afternoon to the Roxbury District Court and attempted to file notices of appeal; and that the Assistant Clerk of Court refused to file, docket, or otherwise accept the notices of appeal.

Plaintiff contends that these alleged facts show a violation of his right, under the due process clause of the Fourteenth Amendment, to an unfettered exercise of his right to appeal, citing Worcester v. Commissioner of Internal Revenue,[3] 1966, 1 Cir., 370 F.2d 713, 718, and Marano v. United States,[4] 1967, 1 Cir., 374 F.2d 583, 585.[5]

The amended complaint seeks the following relief:

(1) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring unconstitutional the various alleged actions of the defendants, outlined above, which allegedly coerced the plaintiff into withdrawing his appeals;

(2) an injunction prohibiting the defendants from refusing to accept and process plaintiff's appeals;

(3) an injunction prohibiting defendants from noting or recognizing any sentence except that allegedly imposed originally by the district court;[6] and

(4) such other relief as is just and proper.

On December 19, 1968, following a hearing, the Court, with the assent of the defendants,[7] issued a preliminary injunction restraining the defendants from enforcing that portion of the state court's order which subjected plaintiff to probation as a result of his convictions. On the same date, defendants filed a motion to dismiss and a motion that the Court abstain from exercising jurisdiction. Both sides briefed the legal issues raised by these motions, but on January 6, 1969, this Court deferred action on the motions until trial. A

3. In *Worcester* the trial judge told the defendant at the sentencing hearing that if he (the defendant) was not content to accept probation without appealing, but chose the alternative of appealing, he ran the risk that the sentence he would have to appeal from would be a jail sentence. The Court of Appeals held that "[t]he court was without right to bargain thus with the defendant, or to put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered." 370 F.2d at 718.

4. In *Marano* the Court of Appeals held that, absent aggravating circumstances, a defendant whose first conviction was reversed and who was retried and again convicted before the same judge could not then be given a longer sentence than that imposed originally. The defendant "should not have to fear even the possibility that his exercise of his right to appeal will result in the imposition of a direct penalty for so doing." 374 F.2d at 585.

5. Plaintiff also claims that the alleged resentencing amounted to double jeopardy (Fifth and Fourteenth Amendments), that the alleged increase in sentence constituted cruel and unusual punishment (Eighth and Fourteenth Amendments), and that the alleged imposition of bail under the circumstances violated his rights under the bail clause of the Eighth Amendment. In addition, he contends that he was deprived of his right to the assistance of counsel and of his right to be tried by a jury in the Superior Court (Sixth and Fourteenth Amendments).

6. Paragraph 1(a) of the prayer, appearing on page 6 of the amended complaint, requests an injunction enjoining the defendants, their agents, employees and persons acting in concert with them from:
"Maintaining on any court record in the Roxbury District Court a notation, writing or other form of communication other than that the plaintiff Glen Grayson was sentenced to a three months suspended and concurrent sentence on criminal complaints numbered 43144 and 43145 (assault and battery) and that criminal complaint numbered 43143 (trespass) was placed on file."

7. At the time the injunction first issued only the defendants Montgomery and Goldstein were parties to the case; however, by stipulation dated December 27, 1968, the four Judges of the Roxbury District Court were added as parties defendant and the preliminary injunction was conceded to apply to them as well.

two-day trial on the merits was held on January 9 and January 31, 1969, following which both sides again briefed the applicable issues of fact and law.

█ This Court need not resolve the legal issues raised by defendants' motion that the Court abstain from exercising jurisdiction. Nor does the Court reach the merits of the basic dispute. The plaintiff has not exhausted the judicial remedies available to him in the state courts, and for that reason the complaint must be dismissed. Johnson v. Walker, 1963, 5 Cir., 317 F.2d 418, 419; Waldon v. Iowa, 1963, 8 Cir., 323 F.2d 852.

Despite the plaintiff's efforts to suggest the contrary, it is clear that his complaint stems from the custody and control exercised over him by state authorities as the result of the operation of the state's criminal processes. It was against that "custody" that the preliminary injunction in this case was addressed. It is in part to that "custody" that the prayer in the amended complaint speaks. And, indeed, did he not claim to be aggrieved by that "custody" plaintiff would lack standing to prosecute this action. Mowers v. United States Attorney General, 1969, S.D.N.Y., 297 F.Supp. 535, 537.[8]

In short, the plaintiff's status is that of a state prisoner seeking to challenge the legality of his custody by resort to the federal courts, and he differs from the traditional habeas corpus petitioner only in the name he ascribes to his petition and in that he seeks injunctive and declaratory relief.

█ The law is settled, however, that the civil rights act, 42 U.S.C. § 1983, may not be used as a substitute for habeas corpus so as to circumvent the familiar doctrine requiring the exhaustion of state remedies. Still v. Nichols, 412 F.2d 778 (1 Cir., June 5, 1969); Johnson v. Walker, 1963, 5 Cir., 317 F.2d 418, 419; Gaito v. Strauss, 1966, W.D. Pa., 249 F.Supp. 923, aff'd, 1966, 3 Cir., 368 F.2d 787, cert. denied, 1967, 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 139; see Goss v. Illinois, 1963, 7 Cir., 312 F.2d 257, 259; cf. United States ex rel. Hunter v. Bibb, 1957, 7 Cir., 249 F.2d 839; cf. Davis v. Maryland, 1965, D.Md., 248 F.Supp. 951, 952–953. To hold otherwise would be tantamount to repealing the Congressional codification of the exhaustion doctrine in 28 U.S.C. § 2254, Still v. Nichols, *supra*, Johnson v. Walker, *supra*, 317 F.2d at 419–420, and would fly in the face of carefully developed standards of comity between federal and state courts.[9]

Those same principles of judicial discretion and comity have also persuaded a long procession of courts to hold that the Declaratory Judgment Act, 28 U.S.C. § 2201, likewise cannot be invoked by state prisoners so as to avoid the necessity of exhausting state judicial remedies.[10] Federal courts have applied

8. The fact that plaintiff is presently on probation rather than being incarcerated does not alter his status of being "in custody" for purposes of federal habeas corpus. Jones v. Cunningham, 1962, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285.

9. While the scope of the doctrine of exhaustion of state remedies in habeas corpus cases differs in certain respects from the scope of the abstention doctrine under 42 U.S.C. § 1983, *see Note*, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 82 Harv.L.Rev. 1486, 1498 (1969), the differences for purposes of this case are insignificant. A court must look to the nature of the relief sought rather than to the nomenclature used by the parties. *See*, Comment, Exhaustion

of State Remedies Under the Civil Rights Act, 68 Col.L.Rev. 1201, 1205 (1968).

10. Ruip v. Kentucky, 1968, 6 Cir., 400 F.2d 871; Scruggs v. Henderson, 1967, 6 Cir., 380 F.2d 981, 982; Booker v. Arkansas, 1967, 8 Cir., 380 F.2d 240, 242–243; United States ex rel. Bennett v. Illinois, 1966, 7 Cir., 356 F.2d 878, cert. denied, 1966, 384 U.S. 946, 86 S.Ct. 1472, 16 L.Ed.2d 544; Sepulveda v. Colorado, 1964, 10 Cir., 335 F.2d 581; Forsythe v. Ohio, 1964, 6 Cir., 333 F.2d 678, 679; Christopher v. Iowa, 1963, 8 Cir., 324 F.2d 180; Waldon v. Iowa, 1963, 8 Cir., 323 F.2d 852; cf. Shaw v. Garrison, 1968, E.D.La., (three judges), 293 F.Supp. 937, 955–956, n. 29, aff'd, 1968, 393 U.S. 220, 89 S.Ct. 453, 21 L.Ed.2d 392; Hill v.

a similar rule to federal prisoners who have sought declaratory judgments rather than filing motions pursuant to 28 U.S.C. § 2255.[11]

It is no answer to argue, as does plaintiff, that his case requires a different result because his attack is aimed not at the Roxbury District Court's judgment of conviction but rather at the events which followed on the heels of the conviction and which affected his rights to appeal and to a trial *de novo* before a jury. Similar claims have been rejected by the Court of Appeals for the Eighth Circuit in Waldon v. Iowa, *supra,* 323 F. 2d 852, where a state prisoner sought a declaratory judgment that the State had fraudulently deprived him of an appeal from his conviction and sentence and that he was entitled to an appeal, and in Christopher v. Iowa, *supra,* 324 F.2d 181, where a state prisoner sought by a declaratory judgment action to contest an alleged failure by the State Supreme Court to render any decision upon a petition for a writ of certiorari. In both instances the court required the petitioner to resort first to state court remedies.

"[A]ny declaratory decree that the judgment here involved was invalid, because appellant had improperly been deprived of an appeal, would be in fact a review of the judgment and in effect a revision of it, since its adjudicatory reach is against the judgment itself.

"In the extreme sensitiveness of this area of federal-state relationship, there must be kept in mind what was emphasized in Fay v. Noia * * *

in its discussion of habeas corpus jurisdiction, that the power which it was intended a federal district court should have in respect to state prisoners was that of acting as to the restraint involved and not of dealing with the judgment existing. 'Indeed, it [federal district court] has no other power; it cannot revise the state court judgment; it can only act on the body of the petitioner.' [Fay v. Noia] 372 U.S. [391] at 431, 83 S.Ct. [822] at 844, 9 L.Ed.2d 837."

Waldon v. Iowa, *supra,* 323 F.2d at 853.

This conclusion—that a state prisoner must first exhaust the available state judicial remedies—is sound, particularly in view of the Supreme Court's holding in Cochran v. Kansas, 1942, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453, that a state Supreme Court is obliged to conduct a hearing under its post-conviction procedures to inquire into a state prisoner's charges of interference with his attempt to appeal a lower state court conviction. *See* United States ex rel. Atterbury v. Ragen, 1956, 7 Cir., 237 F. 2d 953, 957.

Plaintiff concedes that the Commonwealth provides post-conviction remedies of writs of error, mandamus, and habeas corpus.[12] Plaintiff, however, has made no attempt to pursue these or any other state remedies. He has never given the Supreme Judicial Court[13] of the Commonwealth an opportunity to hear and determine his claims against the Justices, Clerk and Assistant Clerk of the Municipal Court of the Roxbury District. He contends that "[s]uch a cumbersome and weary process in the state

---

Nelson, 1967, N.D.Cal., 272 F.Supp. 790, 799.

11. Hurley v. Lindsay, 1953, 4 Cir., 207 F. 2d 410; *see* Clark v. Memolo, 1949, 85 U.S.App.D.C. 65, 174 F.2d 978, 981.

12. Plaintiff's "Memorandum in Opposition to Defendants' Motion for Abstention and to Dismiss the Complaint," paragraph C, pages 10–11.

13. M.G.L. c. 211, § 3 provides as follows:
"The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue writs of error, certiorari, mandamus, prohibition, quo warranto and all other writs and processes to such courts * * * and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws."

courts would not provide the plaintiff with a speedy and effective means of obtaining relief." This gratuitous assertion does not relieve the plaintiff from the requirement that before seeking the intervention of this court he must first exhaust the remedies available in courts of the Commonwealth of Massachusetts.

It is ordered that the amended complaint be dismissed, without prejudice and without costs.